Eric S. Postma, OSB #993478
epostma@bittner-hahs.com
Bittner & Hahs, PC
4949 SW Meadows Road, Suite 260
Lake Oswego, OR 97035
P:  (503) 228-5626
F:  (503) 228-8566
*Attorney for Defendants*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **RADAGAST PET FOOD, INC**., an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>**CENTINELA FEED, INC**., a California corporation, and **THE LOTUS PET FOOD, INC**., a California corporation,<br><br>Defendants. | Case No.<br><br>**NOTICE OF REMOVAL** |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendants Centinela Feed, Inc. and The Lotus Pet Food, Inc. hereby remove this action from the Citcuit Court of the State of Oregon for the County of Multnomah to the United States District Court for the District of Oregon Portland Division.

1. Defendants are parties in a civil action brought against them in the Circuit Court of the State of Oregon for the County of Multnomah entitlted *Radagast Pet Food, Inc., Plaintiff, v. Centinela Feed, Inc., and The Lotus Pet Food, Inc., Defendants,* Case No. 19CV33707. A copy of the Complaint and the Acceptance of Service in that action are attached to this notice and constitute all process, pleadings, and orders served on Defendants in that action up to the present date.

///

PAGE 1 – NOTICE OF REMOVAL

BITTNER & HAHS, P.C.
4949 SW MEADOWS RD., STE 260
LAKE OSWEGO, OR  97035
TEL: (503) 228-5626
FAX: (503) 228-8566

2. The state court action was commenced when the Complaint was filed with the County Clerk for Multnomah County, Oregon, on or about July 31, 2019. A copy of the Summons and Complaint were accepted for service by Defendants on August 13, 2019. Defendants have filed no pleadings in this cause. This notice of removal is filed within 30 days after effective service of process.

3. The state court action is a controversy between citizens of different states. When the Summons and Complaint were served, Defendants were, and now are, California entities.

4. This is an action of a civil nature over which this Court has jurisdiction pursuant to 28 USC § 1332(a), in that it is a suit for damages on account of a breach of contract in which the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

5. This notice is signed pursuant to FRCP 11.

DATED this 11th day of September, 2019.

                                                             BITTNER & HAHS, P.C.

                                                             By:    s/Eric S. Postma
                                                                     Eric S. Postma, OSB #993478
                                                                     *Of Attorneys for Defendants*

|   |   |
|---|---|
| IN THE CIRCUIT COURT OF THE STATE OF OREGON FOR THE COUNTY OF MULTNOMAH | |
| RADAGAST PET FOOD, INC., an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>CENTINELA FEED, INC., a California corporation, THE LOTUS PET FOOD, INC., a California corporation,<br><br>Defendants. | Case No.<br><br>COMPLAINT<br>(Breach of Contract)<br><br>Amount Claimed: $150,000.00<br><br>Fee Authority: ORS 21.160(c)<br><br>NOT SUBJECT TO MANDATORY ARBITRATION |

Plaintiff Radagast Pet Food, Inc. ("Radagast") alleges as follows:

**STATEMENT OF THE CASE**

1.

Shortly after Radagast, a former raw cat food manufacturer, announced its closure, Centinela Feed, Inc. ("Centinela") and The Lotus Pet Food, Inc. ("Lotus") approached Radagast about purchasing Radagast's still-valuable intellectual property and other assets. After Centinela and Lotus signed Radagast's nondisclosure agreement, Radagast provided the companies—which admittedly had no prior knowledge of how to make a raw cat food product—with detailed financial information, industry assessment, marketing plans, growth strategy, and production and inventory information. Days later, Centinela and Lotus abruptly stated that they would "pass" on the asset purchase. And just five months later, Lotus announced its own raw cat food line with the same protein varieties, same packaging in tubs, and promoting the Lotus product at a trade show as "exactly the same" as Radagast's. When Radagast promptly sought the return of all confidential information from Centinela and Lotus pursuant to the NDA, the

companies first ignored Radagast and then provided a response falling far short of the what the NDA requires. Radagast brings this action for breach of the NDA to secure its confidential information and protect its valuable intellectual property.

## PARTIES

2.

Radagast is an Oregon corporation that is licensed to conduct business in the state of Oregon, with its principal place of business in Portland, Oregon. Radagast is a family owned and operated company specializing in manufacturing healthy raw pet food for cats.

3.

Centinela is a California corporation. On information and belief, Centinela's place of business is 2727 Maricopa Street, Torrance, California 90503.

4.

Lotus is a California corporation. On information and belief, Lotus' place of business is 2727 Maricopa Street, Torrance, California 90503.

## JURISDICTION AND VENUE

5.

This court has jurisdiction over the parties and this action under ORS 14.030.

6.

Multnomah County is a proper venue for the claims for relief under ORS 14.080 because many of the events alleged in this Complaint, including the injury suffered, occurred within the county.

7.

This court has general personal jurisdiction over Lotus because it has substantial and continuous business contacts with Oregon and the plaintiff damaged by its actions in an Oregon company.

8.

Centinela has consented to jurisdiction in Oregon pursuant to Section 12 of its October 25, 2018 Nondisclosure Agreement with Radagast, providing, "Any litigation relating to this Agreement will be tried in the state or federal courts in Portland, Oregon."

## FACTS COMMON TO ALL CLAIMS

9.

Radagast had been a longtime industry leader in premium raw cat food, selling lamb, chicken, turkey, venison, beef and pork varieties, all single protein recipes in tubs, of its Rad Cat® Raw Diet before economic concerns compelled the company to close its doors on October 15, 2018.

10.

Despite the company's closure, the Radagast intellectual property—including its popular recipes, manufacturing techniques, product sourcing information, trademarks, and others—were still of tremendous value to potential purchasers

11.

Centinela is a retail supplier of pet food and supplies with stores located throughout Southern California.

12.

Lotus makes dry and canned food for dogs and cats for distribution in the United States.

13.

Centinela and Lotus are closely related companies, with Chris Nakagawa acting as both the Chief Executive Officer (CEO) of Centinela and, on information and belief, an executive at Lotus.

14.

Through distribution partners, Radagast provided its Rad Cat® Raw Diet to Centinela stores from 2014 until Radagast ceased distribution due to its closure.

15.

On October 19, 2018, Radagast received a call from Steve Wells, the Category Coordinator at Centinela.  He stated that Centinela "loves the brand" and was wondering if Radagast was "looking for investors."  Wells said the company's CEO, Chris Nakagawa, would like to have a call with Radagast.  Radagast agreed to a call on October 25, 2018.

16.

On the October 25, 2018 call, Nakagawa said he hoped the companies could do a deal together, in the nature of an asset purchase, as Lotus did not have a raw cat food product. Radagast explained that before discussing the matter in detail, Centinela would need to sign a nondisclosure agreement.

17.

Nakagawa followed up with an email with the subject "NDA" and having both the Centinela and Lotus names and logos in the signature block.  The email providing his contact information and said, "[H]ope we can do something together."

18.

Radagast sent Nakagawa its nondisclosure agreement to Nakagawa and he signed it the same day.  A copy of the signed nondisclosure agreement ("the NDA") is attached hereto as "Exhibit A." The NDA is governed by Oregon law, without regard to principles of conflicts of law.

19.

On information and belief, Nakagawa was acting on behalf of both Centinela and Lotus when he executed the NDA, and as detailed below, both companies received confidential information pursuant to the agreement.

IDEALEGAL
2240 N. Interstate Ave., Ste. 270
Portland, Oregon  97227
Telephone: 503-902-5760

20.

The NDA defines "Confidential Information" as "any nonpublic information received from Radagast or otherwise acquired during any tours of Radagast's facilities." It may be "written, oral, in any tangible form or electronic, embodies in or derived from product samples, or in other forms" and "[a]ny Radagast information provided to Recipient is presumed to be Confidential Information unless otherwise stated by Radagast or this agreement."

21.

The NDA is clear that the purpose of Radagast's disclosure of any confidential information to Centinela and Lotus is "evaluating [a] possible business transaction." Section 4 provides that the companies "not use use or disclose Confidential Information, except for the purpose stated above" and "will not reverse engineer Confidential Information or incorporate Confidential Information in any product that Recipient manufactures or sells, or will in the future manufacture or sell."

22.

During a call on October 29, 2018 with Nakagawa and Daron Matsuura, President of Lotus, the parties discussed Radagast's production models, the specialized equipment required to produce raw cat food in tubs, and the use of specific ingredients by Radagast.

23.

On October 30 and 31, 2018, Radagast sent Centinela and Lotus its Confidential Information Memorandum with detailed financial information, industry assessment, marketing plans and growth strategy; its Management Presentation; a revenue and volume spreadsheet showing the company's revenue and amount of all varieties sold from January 2016 - September 2018; Radagast's balance sheet; a list of production equipment; and all of its raw materials ingredient inventory.

24.

On October 31, 2018, Matsuura followed up, asking Radagast for more detailed inventory and product processing information.

25.

At the time Radagast provided its Confidential Information, Centinela and Lotus acknowledged that they had no independent knowledge of how to manufacture a raw cat food.

26.

Radagast's broker followed up with Centinela and Lotus on November 5, November 7, and November 8, 2018 to determine if the companies were interested in a deal with Radagast. On November 9, 2018, Matsuura curtly responded that the companies had decided to pass.

27.

Only five short months later, at the Global Pet Expo in Florida ("Global"), Lotus presented a new raw cat food product offering, sold in tubs as shown in a freezer at the event, and also including lamb, chicken, turkey, venison, beef and pork varieties.

28.

Two women working at the Lotus booth at Global told a contact of Radagast's that they used to feed their cats Rad Cat® Raw Diet and the Lotus product is "exactly the same" except "we figured out that Rad Cat was low in thiamine so we are adding that one thing to the recipe to bump it up." Later, a second Radagast contact went to the Lotus booth and was told, again, that the Lotus product is "exactly the same as Rad Cat."

29.

On March 20, 2019, Radagast received an email from a representative of a different company with whom Radagast was in the final stages of negotiating an asset purchase. The email stated, "I just finished up a meeting with a distributor, who shared the news that Lotus has purchased your formula. Lotus has apparently been sharing this with certain people in the

industry… Now I'm confused. I'd appreciate if you could share where things stand." The potential purchaser broke off negotiations.

30.

Concerned about the status of its confidential information, Radagast's counsel sent a letter to Centinela and Lotus on April 22, 2019 emphasizing that, pursuant to the NDA, the companies should not be using Radagast Confidential Information for any purpose. The letter also demanded that, by May 1, 2019:

> Centinela and Lotus return all Confidential Information provided by Radagast and "state in writing under oath" that "any electronic records or other materials containing Confidential Information" have been destroyed, as required by Paragraph 5 of the NDA.

31.

Hearing nothing, Radagast sent another letter on May 23, 2019 making clear that it would be forced to file a lawsuit for breach of contract against Centinela and Lotus unless the companies complied with the agreement.

32.

Finally, on June 13, 2019, counsel for Centinela and Lotus responded with a letter including a number of false and/or incorrect statements about the background between the parties and nature of the Confidential Information provided. The letter listed only five documents provided by Radagast and stated that Centinela had deleted them.

33.

The June 13, 2019 letter also attached an affidavit from Nakagawa, signed as "President of Centinela Feed, Inc.," ("the Nakagawa Affidavit") averring that Centinela had deleted these five documents but that they had been retained by Centinela's counsel "to be retained by him and to be disclosed or used only if Radagast institutes legal action against Centinela Feed."

34.

Radagast's counsel responded on June 25, 2019, noting that the misstatements in Centinela and Lotus' letter heightened rather than alleviated Radagast's concerns. The letter pointed to whole categories of additional confidential information Centinela and Lotus had not addressed, including the October 29, 2018 discussion of Radagast's production models, specialized manufacturing equipment, and specific ingredients used by Radagast, and the October 31, 2019 email to Matsuura with a detailed breakdown of Radagast's raw materials ingredient inventory.

35.

The Nakagawa Affidavit appeared to come from Nakagawa of Centinela alone, with nothing from Matsuura or anyone else expressly on behalf of Lotus, a company that also received Radagast confidential information. Like the June 13, 2019 letter, The Nakagawa Affidavit failed to account for the additional Confidential Information Centinela and Lotus received by email and over the telephone. Also, importantly, the Nakagawa Affidavit does not state under oath, as required by Paragraph 5 of the NDA, that Centinela and Lotus will cease use of all confidential information, regardless of the extent to which the companies continue to possess physical or electronic copies of the information.

36.

Radagast's June 25, 2019 letter pointed to the statement in the Nakagawa Affidavit that the five Radagast documents currently retained by its counsel will "be disclosed or used only if Radagast institutes legal action against Centinela Feed." Radagast made clear that the NDA forbids disclosure of these documents and that, if Centinela or Lotus need to refer to them in the course of a court proceeding involving Radagast, or in response to a subpoena, it may do so only pursuant to a stipulated protective order that maintains the confidentiality of the documents. Radagast asked counsel for Centinela and Lotus to confirm that the companies understood this. Otherwise, Radagast explained, "the affidavit reads like a threat to expose the

information if Radagast were to file a lawsuit against your clients."

37.

Radagast's June 25, 2019 letter asked that Centinela and Lotus fully comply with the NDA by July 5, 2019, and provide evidence, pursuant to Section 6 of the NDA, that Lotus' new raw cat food product has been independently developed.

38.

To date, Centinela and Lotus have provided no response.

39.

On information and belief, Centinela and Lotus have maintained access to Radagast's confidential information. They have also failed to comply with Section 5 of the NDA. Although the full extent of defendants' possession and potential use of Radagast's Confidential Information is not yet known, the exposure and/or use of such information poses a serious risk of harm to the economic value of Radagast's intellectual property, which are among its key remaining assets. It is unlikely that defendants could provide monetary relief that could adequately compensate Radagast for such threatened economic harm.

40.

The NDA provides, "Recipient acknowledges that money damages would not be a sufficient remedy for breach of this Agreement by Recipient. In the event of a breach of this Agreement, Radagast will be entitled to injunctive relief without posting bond, in addition to any other available remedies." NDA ¶ 11.

41.

Recognizing the serious threat of harm to the value of its intellectual property resulting from defendants' improper retention of Confidential Information, combined with its announcement of a line of raw cat food products, Radagast was forced to hire counsel at substantial expense to institute this litigation to address defendants' breach of the NDA, limit the impact of the breach, enjoin any further breaches, and protect the Radagast intellectual property.

42.

The NDA provides, "In any litigation concerning this agreement, the prevailing party will be entitled to recover all reasonable expenses of litigation, including reasonable attorney fees at trial and on any appeal." NDA ¶ 11.

**CLAIM FOR RELIEF**

**(Breach of Contract – Written)**

43.

Radagast realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

44.

Under the NDA, Centinela and Lotus have duties to (1) return all materials containing Radagast Confidential Information, keeping no copy for themselves; (2) state in writing under oath that all Confidential Information has been returned; and (3) state in writing under oath that defendants will cease all use of Confidential Information.

45.

Centinela and Lotus materially breached these duties by failing to return all Confidential Information and failing to make the required sworn statements, with Lotus, in particular, failing to make any sworn statement at all.

46.

All conditions precedent have occurred, been performed, or are otherwise satisfied, discharged, or excused.

47.

Radagast has suffered, and will continue to suffer, irreparable harm and other damage as a result of defendants' actions.

48.

As a result of Centinela and Lotus' breach of contract, the full extent of which is currently unknown, Radagast has been damaged in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Radagast respectfully requests the following relief:

A. An award of damages in favor of Radagast for $150,000.00;

B. An order that Centinela and Lotus, their agents, directors, officers, servants, employees, successors and assigns, and any entity owned or controlled in whole or in part by Centinela, Lotus, or by any agent, director, officer, servant, or employee of Centinela or Lotus, and all those persons in active concert or participation with all or any of the foregoing, who receive notice of this judgment, directly or otherwise, comply with Section 5 of the NDA by:

    (1) ceasing all use of Radagast's Confidential Information;

    (2) returning all materials furnished by Radagast that contain Confidential Information;

    (3) delivering to Radagast any electronic records or other materials containing Confidential Information, including those materials prepared by Centinela and/or Lotus; and

    (4) each submitting a sworn statement that it has complied with Section 5 of the NDA.

C. An order that Centinela and Lotus, their agents, directors, officers, servants, employees, successors and assigns, and any entity owned or controlled in whole or in part by Centinela, Lotus, or by any agent, director, officer, servant, or employee of Centinela or Lotus, and all those persons in active concert or participation with all or any of the foregoing, who receive notice of this judgment, directly or otherwise, be permanently restrained and enjoined from using, disclosing, or retaining any Radagast Confidential Information;

D. A judgment in favor of Radagast requiring Centinela and Lotus to pay Radagast's actual and consequential damages resulting from Centinela and Lotus' breach of the NDA;

E. To the extent Centinela and/or Lotus have developed—directly or indirectly—any cat food products with the benefit of Radagast Confidential Information, an order directing Centinela and/or Lotus to immediately and permanently cease development, production and/or sale of any such product;

F. An award to Radagast of its costs (including expert fees), disbursements, and reasonable attorney fees incurred in this action, together with interest, including prejudgment interest, pursuant to the NDA and the equity powers of this Court; and

G. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Radagast hereby demands a trial by jury on all issues so triable.

DATED this 31st day of July, 2019.

IDEALEGAL

By: /s/ Elizabeth Milesnick
Elizabeth Tedesco Milesnick
OSB #050933
E-Mail: emilesnick@idealegal.com
Telephone: (503) 902-5760
Attorneys for Plaintiff



## NONDISCLOSURE AGREEMENT
### between

**Radagast Pet Food, Inc. ("Radagast")**
3617 S.E. 17th Avenue
Portland, Oregon 97202

and  *CHRIS NAKAGAWA* ("Recipient")
*CENTINELA FEED & PET SUPPLIES*
*2727 MARICOPA ST.*
*TORRANCE, CA 90503*

**Purpose of disclosure:** *Evaluating possible business transaction.*

Radagast is willing to disclose confidential information to Recipient for the purpose stated above, but only on the conditions stated in this agreement. In order to protect information disclosed by Radagast to Recipient, the parties, intending to be legally bound, agree that:

1. Recipient will keep confidential any nonpublic information received from Radagast, including without limitation information includes plans, specifications, designs, documents, recipes, formulas, sources, tangible or intangible, furnished by Radagast Pet Food, Inc. ("Confidential Information"). Confidential Information may be written, oral, in any tangible form or electronic, embodied in or derived from product samples, or in other forms. Confidential Information includes the terms and existence of this agreement and the fact that the parties are discussing a possible business transaction. Any Radagast information provided to Recipient is presumed to be Confidential Information unless otherwise stated by Radagast or this agreement.

2. Recipient will protect Confidential Information from disclosure by using reasonable care and at least the same care Recipient uses to protect its own confidential information. Recipient will immediately notify Radagast upon discovery of any loss or unauthorized disclosure of Confidential Information, and will provide to Radagast written details regarding the nature and circumstances of the loss or unauthorized disclosure, including the name and address of the recipients and any copies of relevant communications regarding Confidential Information.

3. Recipient may disclose Confidential Information to its employees who need to know Confidential Information for the purpose stated above and who are required by Recipient to comply with the restrictions imposed on Recipient by this agreement. A breach of this agreement by a Recipient employee will be deemed a breach by Recipient.

4. Recipient will not use or disclose Confidential Information, or any portion thereof, except for the purpose stated above and as permitted by this agreement. Recipient will not reverse engineer Confidential Information or incorporate Confidential Information in any products that Recipient manufactures or sells, or will in the future manufacture or sell.

5. At Radagast's request, Recipient will (i) cease all use of Confidential Information; (ii) return all materials furnished by Radagast that contain Confidential Information; and (iii) destroy or deliver to Radagast (as instructed by Radagast) any electronic records or other materials containing Confidential Information, including materials prepared by Recipient. Upon request, Recipient will state in writing under oath whether it has complied with this section.

6. This agreement will remain in effect as long as Recipient knows or possesses Confidential Information, but will not apply to Confidential Information that: (a) is or becomes publicly available through no fault of Recipient; or (b) is or has been received in good faith by Recipient without restriction on use or disclosure from a third party having no obligation of confidentiality to Radagast; or (c) is or has been independently developed by Recipient without reference to Confidential Information received from Radagast, as evidenced by Recipient's written records.

7. Recipient acknowledges that Confidential Information and any intellectual property rights

embodied therein are owned by Radagast or its licensors, and that nothing in this agreement is intended to be a transfer, assignment, or license.

8. If Recipient is required by judicial or administrative process to disclose Confidential Information, Recipient will promptly notify Radagast and allow Radagast a reasonable time to oppose such process. If disclosure is nonetheless required, Recipient will use its best efforts to limit the dissemination of Confidential Information that is disclosed and will furnish only that portion of the Confidential Information that is legally required (in the opinion of its counsel).

9. The fact that portions of Confidential Information may be publicly available or otherwise not subject to this agreement will not affect Recipient's obligations with respect to the remaining portion or with respect to the particular formulation or compilation disclosed by Radagast.

10. Radagast does not guarantee the accuracy or completeness of information disclosed to Recipient. This agreement does not require Radagast to disclose specific information, require either party to enter into any business relationship, or create any agency or partnership between the parties.

11. Recipient acknowledges that money damages would not be a sufficient remedy for breach of this agreement by Recipient. In the event of a breach of this agreement, Radagast will be entitled to injunctive relief without posting bond, in addition to any other available remedies. In any litigation concerning this agreement, the prevailing party will be entitled to recover all reasonable expenses of litigation, including reasonable attorney fees at trial and on any appeal.

12. This agreement will be governed by Oregon law, without regard to principles of conflicts of law. Any litigation relating to this agreement will be tried in state or federal courts in Portland, Oregon. Each party submits to the jurisdiction of such courts, and waives any right to change venue. All additions or modifications to this agreement must be in writing and executed by both parties.

13. Any provision of this agreement that is held invalid will be modified as necessary to render it valid and enforceable. If any provision of this agreement is held invalid and cannot be modified to render it valid and enforceable, the invalidity will not affect other obligations, provisions, or applications of this agreement that can be given effect without the invalid provisions.

14. Radagast's failure to demand strict performance of any provision of this agreement will not constitute a waiver of any provision of this agreement or the right to demand strict performance in the future.

15. This agreement may be executed in counterparts. Fax or electronic transmission of a signed original document will be equivalent to delivery of an original.

Effective Date: __10/25__, 20_18_

**Radagast Pet Food, Inc.**

_Janice M Hatch-Rizzi_
Authorized Signature

_Janice M Hatch-Rizzi_
Name

_President_
Title

**[COMPANY NAME]**

_Chris Nakagawa_
Authorized Signature

_CHRIS NAKAGAWA_
Name

_CEO._
Title

_CENTINELA FEED & PET SUPPLIES._

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| RADAGAST PET FOOD, INC., an Oregon corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CENTINELA FEED, INC., a California corporation, THE LOTUS PET FOOD, INC., a California corporation.<br><br>　　　　　Defendants. | Case No. 19CV33707<br><br>ACCEPTANCE OF SERVICE |

Please take notice that Eric S. Postma, of Bittner & Hahs PC, 4949 SW Meadows Road, Suite 260, Lake Oswego, Oregon, 97035, attorney for Defendants Centinela Feed, Inc. and The Lotus Pet Food, Inc. ("Defendants"), has been authorized to accept service on behalf of Defendants and does hereby acknowledge service of the Summons and Complaint in the above-entitled action for and on behalf of the above-named party with like effect as personal service upon said party, effective August 12, 2019.

DATED this 13th day of August, 2019.

BITTNER & HAHS PC

*/s/ Eric S. Postma*
Eric S. Postma, OSB No. 993478
4949 SW Meadows Road, Suite 260
Lake Oswego, OR 97035
E-mail: epostma@bittner-hahs.com
Phone: (503) 228-5626

Attorneys for Defendants Centinela Feed, Inc. and The Lotus Pet Food, Inc.

| | |
|---|---|
| 1 | IDEALEGAL LLC |
| 2 | |
| 3 | */s/  Elizabeth Milesnick* |
| | Elizabeth Tedesco Milesnick, OSB No. 050933 |
| 4 | 2240 N Interstate Ave., Suite 270 |
| | Portland, OR  97227 |
| 5 | E-mail: emilesnick@idealegal.com |
| | Phone: (503) 902-5760 |
| 6 | |
| 7 | Attorneys for Plaintiff Radagast Pet Food, Inc. |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of September, 2019, I served the foregoing **NOTICE OF REMOVAL** on the following individual:

Elizabeth Tedesco Milesnick, OSB #050933
Idealegal
2240 N. Interstate Avenue, Suite 270
Portland, OR 97227
E:  emilesnick@idealegal.com
*Of Attorneys for Plaintiff*

☒    mailing to said person a complete and correct copy thereof, contained in a sealed envelope, addressed as set forth above and deposited in the United States mail in Lake Oswego, Oregon, with postage thereon prepaid, on said day.

☐    emailing to said person at the email address set forth above, a complete and correct copy thereof, on said day.

☐    telephonic facsimile communication device, at the telephone number set forth above, which device was working at the time service was made.  A printed confirmation of receipt of the message generated by the transmitting machine is attached hereto.

☐    hand delivering to said attorneys a complete and correct copy thereof, contained in a sealed envelope, at the address set forth above, on said day, and leaving it with the attorneys' clerk, or person apparently in charge of the office, or in a conspicuous place therein if no one was apparently in charge of the office.

DATED this 11th day of September, 2019.

BITTNER & HAHS, P.C.


By: s/Eric S. Postma
    Eric S. Postma, OSB #993478
    *Of Attorneys for Plaintiff*

Page 1 -   CERTIFICATE OF SERVICE