Eric S. Postma, OSB #993478
epostma@bittner-hahs.com
Nathan B. Pogue, OSB #164611
npogue@bittner-hahs.com
Bittner & Hahs, PC
4949 SW Meadows Road, Suite 260
Lake Oswego, OR 97035
P:  (503) 228-5626
F:  (503) 228-8566
*Of Attorney for Defendants*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **RADAGAST PET FOOD, INC**., an Oregon corporation, | Case No. 3:19-cv-01467-JR |
| Plaintiff, | **DEFENDANTS' MOTION TO COMPEL** |
| v. | **Oral Argument Requested** |
| **CENTINELA FEED, INC**., a California corporation, and **THE LOTUS PET FOOD, INC**., a California corporation, | |
| Defendants. | |

## L.R. 7-1 CERTIFICATION

Pursuant to Fed. R. Civ. P. 37(a)(1) and L.R. 7-1(a), the parties have conferred via telephone with Elizabeth Milesnick ("Ms. Milesnick"), counsel for Radagast Pet Food, Inc. ("Plaintiff") on the matters in this motion in good faith and were unable to reach agreement.

## MOTION

Centinela Feed, Inc ("Centinela") and Lotus Pet Food, Inc. ("Lotus") (collectively "Defendants") hereby move the Court for an order compelling Plaintiff to produce documents responsive to Defendants' First Request for Production served on Plaintiff on February 26, 2020, in particular, Requests for Production 5, 6, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, and

BITTNER & HAHS, P.C.
4949 SW MEADOWS RD., STE 260
LAKE OSWEGO, OR  97035
TEL: (503) 228-5626
FAX: (503) 228-8566

29 (the "Outstanding Requests").

## MEMORANDUM

### A.     Legal Standards

A motion to compel may be based on a party's failure to answer a written discovery question, a party's failure to answer an interrogatory, or a party's failure to produce documents or allow inspection as requested under Fed. R. Civ. P. 34.  FRCP 37(a)(3).  Further, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FRCP. 37(a)(4).  "Every party has an obligation to meet their discovery requirements and comply with the rules of civil procedure."  *King v. Atiyeh*, 814 F2d 565, 567 (9th Cir. 1987) *overruled on other grounds by Lacey v. Maricopa Cnty*, 693 F3d 896 (9th Cir. 2012).  The rules of civil procedure applicable to the Requests for Production and Interrogatories at issue here are exceedingly clear on their requirements. *See* Fed. R. Civ. P. 33, 34, 36, and 37. Attorney's fees must be awarded to the party that prevails on a motion to compel. FRCP 37(a)(5).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . ., considering the importance of the issue at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues.  FRCP 26(b)(1).  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevancy is broadly defined for the purposes of discovery, but it does have "ultimate and necessary boundaries." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (citations omitted).

### B.     Background Facts

This case stems from an alleged violation of a Nondisclosure Agreement executed on or about October 25, 2018 ("NDA").  Prior to the NDA, Defendants learned of Plaintiff's business

Page 2 – DEFENDANTS' MOTION TO COMPEL

failings in the raw cat food market while attempting to stock Defendant's stores with Plaintiff's products.  During the course of these conversations about Plaintiff's product availability, Defendants were solicited by Plaintiff to enter into an NDA and discuss an investment in or purchase of Radagast's assets, which included disclosure of their alleged "confidential information."  After executing the NDA and reviewing certain information regarding Plaintiff's business, which also included self-conducted research on Plaintiff's products experiencing multiple recalls in the previous twelve months, Defendant's quickly decided to forego any investment in or purchase of Radagast assets as the perceived profitability of Radagast documents didn't seem to match the current circumstances of Plaintiff's business (i.e., failing). Left without a raw cat food product to stock their own stores, Defendants—who have experience in manufacturing their own cat food lines—reinitiated and continued a long time endeavor to create their own line of raw cat food to fill the void left from Radagast's business failure.

As Defendant's new raw cat food line hit the marketplace, Ms. Milesnick sent a "cease and desist" letter on April 22, 2019, demanding that Defendant's (1) return all Confidential Information or to state "in writing under oath" that such confidential information was destroyed; and (2) "cease marketing and/or selling any product developed with the benefit of Radagast confidential information."  Declaration of Eric S. Postma in Support of Defendants' Motion to Compel ("Postma Dec."), ¶ 2, Ex. A.  By June 10, 2019, Chris Nakagawa, President of Centinela Feed, Inc. executed an Affidavit noting that the "RadCat Documents" had been deleted and that no physical copies were ever created.  *Id.*,   ¶ 3, Ex. B.  On July 31, 2019, Plaintiff filed a civil complaint for breach of contract under the NDA in Multnomah County, Oregon, which was subsequently removed by Defendants to the U.S. District Court of Oregon – Portland Division on or about September 11, 2019 (the "Complaint").

During the course of discovery and on or about January 29, 2020, both Plaintiff and Defendants entered into a Stipulated Protective Order limiting the "use of any information or documents labeled 'Confidential'…to the litigation of this case" and that such documents produced as "Confidential" shall ***not*** be "used by any party for any business, commercial, or

Page 3 – DEFENDANTS' MOTION TO COMPEL

competitive purposes. *Id.*, ¶ 4, Ex. C.   On February 26, 2020, Defendants served Plaintiff with their First Requests for Production ("Defendants' RFP") and First Interrogatories to Plaintiff ("Defendants' Interrogatories").  *Id.*, ¶¶ 5, 6, Exs. D & E.  With the court's discovery deadline then looming, Plaintiff subsequently produced a portion of the responsive documents (via Dropbox) on or about April 15, 2020, after Defendants' provided an extension for such production. *Id.*, ¶ 7.  The production and responses were reviewed and it became apparent that Plaintiff's production was underwhelming and incomplete, with many of the objections suggesting multiple requests were not "relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence." (See Responses to Requests 5, 6, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28). *Id.*, ¶ 8, Ex. F.

Each of the Outstanding Requests (defined above) were objected to in some form based on not being "relevant" or discoverable.  For clarity and to provide a short explanation as to the Outstanding Requests, they will be grouped into the following general categories:

1.  **Financial Information of Company** (Requests: 5, 15, 16, 19):  These requests ask for production of financial information, tax filings, profit and loss statements, sales reports, and other documents helping identify the alleged value of Plaintiff's company at, during, and after the NDA discussions.  For reasons discussed below, these requests and the produced documents will speak directly to the alleged value of the company prior to, during, and after the NDA.  Further, production of these documents will provide further explanation as to why Defendants did not pursue purchasing Plaintiff's assets after the NDA.  These documents are highly relevant to the *actual* value of the intellectual property at the time of the NDA, the damages claimed in Plaintiff's Complaint, and the representations made by Plaintiff about the *alleged* value of the intellectual property prior to, during, and after the NDA.

2.  **Manufacturing Process and Equipment** (Requests 6, 18, 20, 21, 24, 25): These requests ask for production of manufacturing techniques, recipes/ingredients used, equipment lists, vendors, standard operating procedures ("SOPs") and sourcing information.  As discussed below, Plaintiff alleges that Defendants' "use" of their intellectual property contributed to

Page 4 – DEFENDANTS' MOTION TO COMPEL

BITTNER & HAHS, P.C.
4949 SW MEADOWS RD., STE 260
LAKE OSWEGO, OR 97035
TEL: (503) 228-5626
FAX: (503) 228-8566

Defendants' own independent development of a raw cat food line.    Production of these documents are required to show that Defendants did not use the confidential information during the development of their own product.  This can only be accomplished by comparing Plaintiff's manufacturing process and equipment with that used by Defendants in independently developing their own raw cat food product line.

3.  **Recalls and Safety** (Request 17, 23, 26, 28 , and 29):   These requests ask for production of recall information and correspondence regarding Plaintiff's products, compliance and quality related documents, hazard analysis critical control points ("HACCP") documents, information on proteins used by Plaintiff, and sanitation schedules and programs.  As discussed further below, the requested documents will speak to the alleged value of Plaintiff's products being worth less (or "worthless") due to the number of product recalls and manufacturing safety issues of the alleged intellectual property attempting to be sold to Defendants under the NDA, which will also explain why Defendants did not use such information and were not interested in purchasing any of the "assets" for sale.

Finally, it should be noted that after Defendants' initial production of documents, Defendants were met with an onslaught of additional discovery requests from Plaintiff. Plaintiff's counsel provided various letters and emails seeking the additional requested information from Defendants on the following dates: March 13, 2020, April 15, 2020, and August 17, 2020.  Id., ¶¶ 9-11, Exs. G-I. During this time, Defendants provided multiple supplemental responses and clarifications to the additional requests by email and letter to Plaintiff's counsel.

## ARGUMENT

A.    **Plaintiff's claim for Damages is Directly Related to the Alleged Value set forth in the Complaint**

Between April 2020 and present, Defendants have had multiple conversations with Ms. Milesnick about the necessity of producing the Outstanding Requests under Defendants' RFP, including extended phone conversations on or about April 22, 2020 and August 31, 2020.   To date, no documents have been produced by Plaintiff other than those received on April 15 via

BITTNER & HAHS, P.C.
4949 SW MEADOWS RD., STE 260
LAKE OSWEGO, OR  97035
TEL: (503) 228-5626
FAX: (503) 228-8566

Dropbox, which do not include any responsive documents to the Outstanding Requests. The objection has been made by Ms. Milesnick because of Plaintiff's belief that Defendants' Outstanding Requests were not "relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence" and that this case is not about the "value" of Plaintiff's assets, as confirmed by opposing counsel in the letters, phone conversations and emails referenced above. Postma Dec., ¶¶ 8-11, Exs. F-I.

In an August 17, 2020 letter, Ms. Milesnick continued to withhold documents and goes on to state that this case is not about "the value of [Radagast] and its intellectual property…at the time of the NDA…[t]his case is <u>only</u> about defendants' compliance with Section 5 of the NDA." *Id.*, ¶ 11, Ex. I. While it is convenient to make such remarks during the discovery process to avoid producing documents detrimental to Plaintiff's claim for damages, the arguments are patently false as the claims in the Complaint relate directly to the value of the company at the time the documents were exchanged under the NDA and whether Defendants "used" the alleged confidential information in developing their own line of raw cat food. (See, Complaint). Section 5 of the NDA includes restrictions on Defendants' "***use*** of [the] Confidential Information," which is alleged in the Complaint and is inherently the basis for their claimed damages. *Id*.

After conferral and review of her August 17th letter, it became readily apparent that Ms. Milesnick did not believe this case relates to the "value" of her client's company and confidential information (she, too, may have come to realize what Defendants' knew all along), and that this case was simply about the process in which Defendants removed any confidential information under the NDA. Even if we presume her beliefs are true—to which there would be no damages to claim—the fact remains that the Complaint expressly describes the confidential information as "valuable" and is the basis for which Plaintiff claims $150,000 in damages. The first paragraph in Plaintiff's Complaint begins by stating that Defendants approached Plaintiff about purchasing Plaintiff's "still-valuable" intellectual property. The first paragraph ends with the presupposed intent of the NDA to "protect [Plaintiff's] valuable intellectual property." Paragraph 10 of the Complaint states that the "intellectual property—including its *popular recipes, manufacturing*

Page 6 – DEFENDANTS' MOTION TO COMPEL

*techniques, product sourcing information, trademarks, and others*—were still of tremendous value to potential purchasers." Paragraph 39 alleges that the potential misuse of the intellectual property "poses a serious risk of harm to the economic value" of Plaintiff's intellectual property—inferring future damages. Paragraph 41 states that Plaintiff needed to hire counsel to institute litigation because of the "serious threat of harm to the value of [Plaintiff's] intellectual property." Paragraph 47 states that "Radagast has suffered, and will continue to suffer, irreparable harm and damage as a result of defendants' actions." *Id.* If Plaintiff did not intend the value of the intellectual property to be at issue in this case, then it is clear the Complaint alleges substantially more than what Plaintiff is now claiming. In light of Plaintiff's counsel narrowing the scope of the alleged claims, no request to amend the Complaint has been made. The mere fact that the Complaint alleges $150,000 in damages speaks to the alleged value of the company and the confidential information, which is not only highly relevant, but a basis for the damages set forth in the prayer. There is no other way to determine the prayer amount other than placing a value on both the company and the confidential information at the time of the NDA.

Furthermore, the Complaint then alleges that Defendants' used this "valuable" confidential information to manufacture their own raw cat food line. While these allegations are whimsical, and speculative at best, the mere allegation speaks to the inherent value of the confidential information that was allegedly misused, which is a basis for their claimed damages. Defendants are entitled to use these responsive documents to prove their affirmative defenses.

It is clear that this case is not simply about a breach of contract under the NDA, but that Plaintiff is seeking damages directly related to the alleged value of the company and the confidential information disclosed under the NDA. To simply withhold and deny Defendants documents that speak directly to the value of Plaintiff's company at and around the time of the NDA will prejudice Defendants in defending against the $150,000 damages claimed.

### B. Disproving Damages is an Affirmative Defense to Breach of Contract that Defendants are Entitled to Assert

Since Plaintiff has clearly made allegations that the confidential information and the

Page 7 – DEFENDANTS' MOTION TO COMPEL

company were "valuable," disproving the value of the company and confidential information around the time of the NDA is a defense Defendants can and have asserted by way of several affirmative defenses under Defendants' Answer, including "No Actual Injury" and "Speculative Damages." Defendants' Answers (DE 4 & DE 5). Prior to the NDA, and upon information and belief, Plaintiff's company was dissolving, facing multiple nationwide recalls based on the safety of their cat food and the belief if may be harming cats, were struggling to pay creditors, and were subsequently selling off any of the company's alleged assets. The documents disclosed to Defendants under the NDA, including the sales and financial records, did not appear to match the current financial circumstances known to the public at that time (i.e., failing and dissolving), which called into question whether Plaintiff's intellectual property and confidential information was accurate and had any value at all. Defendants were so concerned about the substance of the documents that they developed a deep skepticism about their accuracy, and that what was provided to them for review was a gross misrepresentation of the company's actual value— possibly fraudulently misrepresenting the company in order to sell what little they had for the greatest number possible. Hence, the Defendants ceased any further discussions about purchasing the assets and intellectual property. It should be noted that if it comes to light that Plaintiff's fraudulently misrepresented the value of the company under the NDA, this too could be asserted not only as an affirmative defense but as a possible counterclaim for damages.

Defendants have an absolute right to review documents that directly speak to the value of the company and the accuracy of confidential information Plaintiff was attempting to sell at and around the time of the NDA. To do so would require actual production of the company's records during this time to compare and contrast with what was produced with the actual documents provided under the NDA. This can only be done by ordering the Plaintiff to produce these documents. Denying this motion would prejudice Defendants in not allowing them to show the court their defense, that the confidential information provided was worthless, invaluable, inaccurate, and misleading to investors, which would ultimately lead to the conclusion that Plaintiff has no damages and this suit was brought in an attempt to simply leverage an NDA for

Page 8 – DEFENDANTS' MOTION TO COMPEL

purposes of recovering funds for an already failing business.

    **C.**    **Plaintiff's Process in Manufacturing and Producing the Rad Cat Line is at Issue in this Case Because it Directly Speaks to the Value of the Company, the Misrepresented Confidential Information, and Whether Defendants Misappropriated any Confidential Information after the NDA**

As mentioned above, Plaintiff's Complaint alleges that the company and its confidential information had value at the time of the NDA. The damages prayed for in the Complaint are inherently tied to this alleged value. Furthermore, the process in manufacturing the Rad Cat food line is inherently tied to the value of the company and assets they were trying to sell at the time of the NDA.

Paragraph 10 of the Complaint states that the "intellectual property—including its *popular recipes, manufacturing techniques, product sourcing information, trademarks, and others*—were still of tremendous value to potential purchasers." The Complaint goes on to allege that Defendants failed to comply with Section 5 of the NDA, which includes "ceas[ing] all use of Confidential Information." Paragraph 44 alleges that Defendants failed to provide in writing that "defendants will cease all use of Confidential Information." Furthermore, the prayer itself requests "ceasing all use of Radagast's Confidential Information." These are clear allegations, albeit false, that Defendants continued to use the Confidential Information after the NDA, and made representations after the NDA that could be construed as misappropriating this information (See Complaint, ¶¶ 27, 28), which is also the basis for the $150,000 damages claim. To say that Defendants didn't misappropriate the confidential information would leave Plaintiff's without damages, resulting in this case being frivolous in nature—if not dispositive of the entire case.

Ultimately, Defendants are entitled to production from Plaintiff that speaks to Radagast's manufacturing process because: (1) it speaks directly to the value of the confidential information and assets Plaintiff was trying to sell; and (2) the Complaint alleges in multiple locations that Defendants misappropriated this confidential information. To defend the latter, Defendants need to show that their process in manufacturing their own engineered raw cat food line differs from

BITTNER & HAHS, P.C.
4949 SW MEADOWS RD., STE 260
LAKE OSWEGO, OR 97035
TEL: (503) 228-5626
FAX: (503) 228-8566

the way in which Plaintiff produced its own products.  Not only will this evidence show that no misappropriation of the confidential information occurred, but that Plaintiff's damages are $0. By not granting this motion, Defendants will be left to defend this case against the alleged misappropriation without proving to the court that Defendants' process in manufacturing their raw cat food line is different and independently developed, and that the confidential information provided was inaccurate and grossly misrepresented the value of Plaintiff's failing business which is inherent in the Plaintiff's claim for damages.

**D.    Plaintiff's Unwillingness to Produce Documents have led to Discovery Delays**

By not producing the requested documents relating to the value of the Plaintiff's company, and continuing to withhold them to date without any legal basis to do so, Defendants have been unable to schedule depositions with representatives of Plaintiff and have incurred substantial cost and time attempting to obtain the requested production.

## CONCLUSION

Defendants have been denied production of documents they are entitled to in order to adequately defend the erroneous claims brought against them by Plaintiff.  To properly defend these claims and the damages asserted in the Complaint, Defendants must receive production of these documents.  Otherwise, they face a case in which Plaintiff claims damages directly relating to the speculative value of the company and the confidential information disclosed under the NDA without any evidence rebutting that very same fact.  We request the court grant this motion so Defendants can properly defend these claims.

DATED this 21st day of September, 2020.

BITTNER & HAHS, P.C.


By:    s/Eric S. Postma
       Eric S. Postma, OSB #993478
       Nathan B. Pogue, OSB #164611
       *Of Attorneys for Defendants*

BITTNER & HAHS, P.C.
4949 SW MEADOWS RD., STE 260
LAKE OSWEGO, OR  97035
TEL: (503) 228-5626
FAX: (503) 228-8566

1    **<u>CERTIFICATE OF SERVICE</u>**

2         I hereby certify that on the 21st day of September, 2020, I served the foregoing

3    **DEFENDANTS' MOTION TO COMPEL** on the following individuals:

4    Elizabeth Tedesco Milesnick, OSB #050933
     Idealegal
5    2240 N. Interstate Avenue, Suite 270
     Portland, OR 97227
6    E:  emilesnick@idealegal.com

7    and

8    Laura Salerno Owens, OSB #076230
     Adam M. Starr, OSB #125393
9    Molly K. Honoré, OSB #125250
     Markowitz Herbold PC
10   1455 SW Broadway, Suite 1900
     Portland, OR 97201
11   E:  laurasalerno@mhgm.com
          adamstarr@markowitzherbold.com
12        mollyhonore@markowitzherbold.com

13   *Of Attorneys for Plaintiff*

14   by mailing to said person a complete and correct copy thereof, contained in a sealed envelope,

15   addressed as set forth above and deposited in the United States mail in Lake Oswego, Oregon,

16   with postage thereon prepaid, on said day.

17         DATED this 21st day of September, 2020.

18                                   BITTNER & HAHS, P.C.

19

20                                   By:s/Eric S. Postma
                                        Eric S. Postma, OSB #993478
21                                      *Of Attorneys for Defendants*

22

23

24

25

26

Page 1 -   CERTIFICATE OF SERVICE