# IdeaLegal

March 13, 2020

VIA E-MAIL

Eric Postma
Nathan Pogue
Bittner & Hahs, PC
4949 SW Meadows Road, Suite 260
Lake Oswego, OR 97035
epostma@bittner-hahs.com
npogue@bittner-hahs.com

Re:   Conferral re Defendants' Written Discovery Responses

Dear Eric and Nathan,

We write to address certain deficiencies in defendants' written discovery responses to date. Once defendants' discovery responses are complete, we look forward to working with you to find mutually convenient dates for depositions of the parties.

<u>Produce Documents and Written Discovery Responses Without Objections</u>

As I have mentioned in email correspondence following the untimely service of defendants' responses to Radagast's written discovery, defendants have waived all objections of any sort. *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012) provides a good summary of the law on such waiver and its effects:

> "The party upon whom the interrogatories have been served shall serve a copy of the answers and objections if any within 30 days after the service of the interrogatories." Fed.R.Civ.P. 33(b)(2). "All grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown." Fed.R.Civ.P. 33(b)(4). Several courts have concluded that this provision means "[a] party who fails to file timely objections waives all objections, including those based on privilege or work product." *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409 (C.D.Cal.2005) (citing cases).
>
> Although Rule 34 does not contain an automatic waiver provision for untimely objections as does Rule 33(b)(4), "courts have reasoned that Rule 33(b)(4) type waiver should be implied into all rules involving the use of the various discovery mechanisms." *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 238 F.R.D. 536, 538 (D.Conn.2006) (citing *Byrd v. Reno*, No. 96–2375(CKK)(JMF), 1998 WL 429676, at *6 (D.D.C. Feb. 12, 1998); *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 661 (D.Colo.2000); and *Deal v. Lutheran Hosp. & Homes*, 127 F.R.D. 166, 168 (D.Alaska 1989)). This Court agrees that the same waiver provision found in Rule 33(b)(4) applies to

2240 N. Interstate Ave. Ste. 270    T. 503 902 5760
Portland, Oregon 97227              E. emilesnick@idealegal.com

**IdeaLegal**

Eric Postma
Nathan Pogue
March 13, 2020
Page 2 of 8

document requests under Rule 34. See *Deal*, 127 F.R.D. at 168 (concluding that "on principle, except to avoid manifest injustice, procedures under Rule 45(d)(1) and under Rules 33, 34, and 36 should be similar, if not identical"); *Byrd*, 1998 WL 429676, at *4 (concluding that there is "no reason to give [Rule 34] a dissimilar interpretation" than that given to Rule 33(b)(4)).

Courts have found objections waived, including those based on attorney-client privilege and the work-product protection, where a party serves no response at all for a lengthy time after a response is due, where the party fails to provide a privilege log, and where the nature of the information requested suggests that an objection would normally be made. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.1992) (stating that "a failure to object to discovery requests within the time required constitutes waiver of any objection"); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981) (finding that untimely service of responses to interrogatories waives objections where no response or objection at all was provided); *see also Horace Mann Ins. Co.*, 238 F.R.D. at 538 (holding an untimely assertion of attorney-client privilege was waived when asserted twenty-two days late, without a privilege log, and where the dispute by its very nature involved communications between battling insurance companies and their lawyers).

Radagast's requests for production and interrogatories were served December 12, 2019 and defendants' responses were due January 13, 2020. Defendants neither requested nor obtained an extension of time to respond. We received no responses by January 13, 2020 and I followed up the next day. Finally, on January 28, 2020—15 days late—we received defendants' responses to the requests for production (RFPs). Defendants' did not serve their interrogatory responses until February 5, 2020—23 days late—and only after Radagast was forced to approach the Court about the issue. Defendants have provided no privilege log.

Needless to say, any objections, including those based on attorney-client privilege, have been waived. Please produce a new set of responses to Radagast's written discovery with all rejections removed, and with <u>all</u> responsive information included, regardless of whether defendants had initially objected to its inclusion. Please also produce <u>all</u> responsive documents in their unredacted form, including any documents previously withheld on the basis of privilege. We will look for the supplemented responses within ten days.

2240 N. Interstate Ave. Ste. 270   T. 503 902 5760
Portland, Oregon 97227             E. emilesnick@idealegal.com

EXHIBIT G
Page 2 of 8

**IdeaLegal**

Eric Postma
Nathan Pogue
March 13, 2020
Page 3 of 8

Supplement Interrogatory Responses

Please also supplement, within ten days, responses to the following interrogatories:

- Regarding Interrogatory No. 2, in addition to the documents listed in the Nakagawa affidavit, defendants also received email communications from Carol Frank containing Radagast Confidential Information, and participated in telephone calls with Radagast during which Confidential Information was discussed, and perhaps had subsequent meetings, calls, or text exchanges discussing the information.[1] Please supplement defendants' response to this interrogatory to address these categories of Confidential Information, including what defendants recall of what they learned during any telephone calls with Radagast or its representatives, and what has become of that information.

    As you know, Paragraph 1 of the NDA defines "Confidential Information." Defendants have waived any objection to using this definition in responding to the interrogatories.

- As Interrogatory No. 3 requests, please let us know how each individual item of Radagast Confidential Information was used and by whom, and for what exact purpose (i.e., how was it used to evaluate a potential purchase, or used by Lotus in some other way, in lieu of a purchase), and include the Confidential Information discussed above regarding Interrogatory No. 2.

- In response to Interrogatory No. 4, please respond with the detail the question requires: Are Chris Nakagawa and Daron Mastuura the only "representatives of Centinela" to have disclosed Radagast Confidential Information? If so, for each piece of Confidential Information (including the Confidential Information discussed above regarding Interrogatory No. 2), please supplement defendants' response to state which of these individuals disclosed it, to whom, when, and for what purpose. This should include (a) why Daron Matsuura was brought into the discussions with Radagast, and (b) the disclosures to "legal counsel at a later date."

- The response to Interrogatory No. 5 states that "all information received by Plaintiff was placed into a single folder." This is unclear. Did defendants intend to refer to information received from (rather than "by") Plaintiff? Does this include emails from Carol Frank, Radagast's broker? What about notes defendants may have taken during phone calls with Radagast, or subsequent to those calls? We ask that

---

[1] As defendants acknowledge in response to Interrogatory No. 11, "information reviewed by Mr. Matsuura was received from Radagast or representatives which may have included teleconferences, emails, and discussions."

2240 N. Interstate Ave. Ste. 270    T. 503 902 5760
Portland, Oregon 97227    E. emilesnick@idealegal.com

EXHIBIT G
Page 3 of 8

**IdeaLegal**

Eric Postma
Nathan Pogue
March 13, 2020
Page 4 of 8

- defendants supplement this interrogatory to state "which particular information was deleted," who deleted it, and when it was deleted. What were the "printed documents" that were shredded, by whom, and when did this occur?

- Defendants' response to Interrogatory No. 6 must detail defendants' efforts to comply with Section 5 of the NDA and should include the circumstances surrounding the creation of the Nakagawa affidavit and the statements made therein, including any conversations with counsel, and the decision not to provide a statement on behalf of Mr. Matsuura. It must also include details relating to the cessation of use of Confidential Information (as defined by the NDA) by both Mr. Nakagawa and Mr. Matsuura, assuming that has occurred.

- In response to Interrogatory No. 7, defendants object that "it is based on a false premise and assumption that either of Defendants initiated the inquiry regarding the potential investment or asset purchase." For one, defendants have waived any objections, as discussed above. For another, defendants' response to Interrogatory No. 3 states, "Mr. Nakagawa had intended to discuss making an investment." Please supplement the response to Interrogatory No. 7 to state why Mr. Nakagawa had such an intention and how he conveyed it to Radagast.

- Defendants themselves have repeatedly objected that not all information Radagast provided qualifies as "Confidential Information" (though, of course, that objection is waived). Accordingly, defendants' response to Interrogatory No. 3, directed to "Confidential Information," would not cover Interrogatory No. 10. Please supplement accordingly, in the detail required by the interrogatory.

- Regarding Interrogatory No. 11, Radagast has asked for, and is entitled to know, "which particular information" Mr. Matsuura reviewed (i.e., a description of each piece of information), who provided that information (whether it was a particular representative of Radagast, its broker Carol Frank, Mr. Nakagawa, or someone else), when they provided it, and substance of that review.

- Interrogatory No. 12 seeks detail regarding defendants' decision against a potential investment in and/or asset purchase of Radagast, including the persons who made the decision and the length and nature of the decision-making process, among other things. The response states only that the deciding factors "became apparent" but not who they became apparent to, and includes nothing about the length and nature of the decision-making process. This information must be included.

2240 N. Interstate Ave. Ste. 270     T. 503 902 5760
Portland, Oregon 97227     E. emilesnick@idealegal.com

IdeaLegal

Eric Postma
Nathan Pogue
March 13, 2020
Page 5 of 8

- The response to <u>Interrogatory No. 13</u> is missing the details requested in parts (a), (b), and (d),  Defendants must supplement it.  A reference to documents relating to a 2014 appointment to tour an HPP facility falls far short of answering the interrogatory.

- For <u>Interrogatory Nos. 14-18</u>, to the extent any information was withheld on the basis of defendants' objection to the definition of "Radagast Confidential Information," please supplement the responses to include that information.  The objection has been waived.  Radagast "Confidential Information" has the meaning set forth in Paragraph 1 of the NDA.

- <u>Interrogatory No. 19</u>, requests, in addition to the names and titles of the participants in the 2019 Global Pet Expo trade show, "each person's duties and activities on [defendants'] behalf at the Trade Show."  The response does not include this information.

- According to defendants' response to <u>Interrogatory No. 20</u>, despite that Radagast's exit from the market was a key part of Lotus' decision to produce a new line of raw cat food, no marketing strategy whatsoever touched on the Radagast product.  There has never been any marketing direction at all relating to Rad Cat.  If this is not entirely the case, please supplement defendants' response to this interrogatory.

- Regarding <u>Interrogatory No. 21</u>, we were surprised to receive this response given that Lotus representatives were overheard making such connections and comparisons.  Please confirm that defendants diligently searched for information responsive to this interrogatory.

- Regarding <u>Interrogatory Nos. 22-24</u>, defendants have waived this objection.  The response to Interrogatory No. 24 also appears to be incomplete as to Steve Wells.

<u>Supplement Requests for Production</u>

With regard to defendants' RFPs, as threshold matter, please clarify the meaning of the statement, "No responsive documents are maintained."  Does this mean that responsive documents did exist, but they have since been deleted or removed?  Or that they never existed in the first place?  As the RFP Instruction No. 6 provides,

> With respect to each document or thing which has been lost, discarded, or destroyed, or has been removed from your possession, custody or control since its preparation or receipt, identify the document or thing; state when the document or

**IdeaLegal**

Eric Postma
Nathan Pogue
March 13, 2020
Page 6 of 8

> thing was last in your possession, custody or control; state the particular discovery request(s) to which it would otherwise be responsive; set forth in detail the circumstances of the loss, destruction or transfer from your possession thereof, including when the document or thing was last in your possession, custody or control, why the document or thing was transferred or destroyed, who authorized and/or had knowledge of the transfer or destruction; and identify all persons having knowledge of the contents of the document or thing.

Please supplement defendants' responses to the RFPs to account for any documents that have been lost, discarded, destroyed, or removed from defendants' possession. Or if "No responsive documents are maintained" has a different meaning, please clarify the statement.

Please also supplement, within ten days, responses to the following RFPs:

- Regarding RFP No. 4, defendants' production of "Confidential Information" did not include email communications to or from Carol Frank or notes or other documentation from (or subsequent to) telephone calls with Radagast during which Confidential Information was discussed. Please produce all information described in Paragraph 1 of the NDA as "Confidential Information." As noted above, defendants have waived any objection that the definition is somehow vague or seeks a legal conclusion.

- RFP Nos. 5, 8, and 14 includes any notes (hand-written or electronic) about any Radagast Confidential Information, notes from phone calls, emails or other communications discussing information received from Radagast, or any forwarding of or commenting on emails to or from Carol Frank, even between Mr. Nakagawa and Mr. Matsuura, or other company representatives, among other things. The request also encompasses any test messages, skype or messaging app conversations, regarding Radagast information, if they exist. Please produce all such information or confirm that none exists.

- RFP No. 6 includes any documentation relating to email archives or other backups, not just written document retention policies. Document retention is also a component of a company's hazard analysis and critical control points (HACCP) plan, which Lotus is required to maintain. Please provide all responsive documents.

- RFP No. 9 includes disclosure of Radagast documents (including any notes, texts, or messaging in any form) between Mr. Nakagawa and Mr. Matsuura, or any other of defendants' personnel or agents (including attorneys). Please produce all such information or confirm that none exists.

**IdeaLegal**

Eric Postma
Nathan Pogue
March 13, 2020
Page 7 of 8

- Regarding RFP Nos. 10 and 11, as noted above, defendants have waived the attorney-client privilege and communications—particularly with California counsel—about the process of complying with Radagast's demand under Paragraph 5 of the NDA is relevant to this action. This request also encompasses Mr. Nakagawa's disclosures to Mr. Matsuura. Please produce all correspondence and other relevant information. RFP No. 10 also encompasses the parties' initial correspondence about signing the NDA.

- Regarding RFP No. 12, defendants' document production included no documents referring to Carol Frank—who was involved as an agent for Radagast during discussions between the parties—and very few related to either of the Hatch-Rizzis. This request also encompasses emails to third parties referencing any of these individuals. Please supplement the document production with any information relating to these individuals.

- Regarding RFP No. 15, defendants contend in their interrogatory responses that Lotus' decision and effort to produce a raw cat food was ongoing for years, yet defendants apparently possess no responsive documents. They produced no documents relating to any analysis of the profitability, market research, feasibility, potential price point, manufacturing process or techniques, package design, or many other considerations relating to launching a raw cat food. It is highly unlikely that no documents containing any internal (or external) analysis exist. Please supplement the document production.

- RFP No. 16 requests evidence of the development, formulation, and manufacture of Lotus' raw cat food and defendants have waived all objections. While the document production includes some information relating to formulation, there is no documentation of the development or manufacture of any other aspect of the product, including where, how, and with what equipment the product is manufactured, how Lotus decided on the method of production and processes it would use to manufacture, how Lotus arrived at the protein types to manufacture, and how to package the products, label them, or the label design. It is simply implausible that no further documents exist. Please complete the production.

- If any documents responsive to RFP No. 17 are being withheld on the basis of attorney-client privilege or any other objection, please produce them.

- If any documents responsive to RFP No. 18 are being withheld on the basis of relevance or any other objection, please produce them.

2240 N. Interstate Ave. Ste. 270    T. 503 902 5760
Portland, Oregon 97227    E. emilesnick@idealegal.com

EXHIBIT G
Page 7 of 8

**IdeaLegal**

Eric Postma
Nathan Pogue
March 13, 2020
Page 8 of 8

- Regarding RFP No. 19, by stating that no documents exist responsive to the request, defendants are averring there is no overlap between the manufacturing techniques or methods used by Lotus for its raw cat food line and the manufacturing techniques or methods defendants learned from talking to Radagast.

- Regarding RFP No. 20, by stating that no documents exist responsive to the request, defendants are averring there is no overlap between the vendors used for any aspect of the production of Lotus' raw cat food line and the vendors defendants found in information received from Radagast.

- Unless defendants are relying on some objection to RFP No. 22, which they cannot now do, they are stating that there are no documents in existence relating to the marketing strategy for the brand new raw cat food line they introduced at the Global Pet Expo on March 20-22, 2019. We simply cannot see how this is possible. Please supplement the document production.

- In response to RFP No. 23, defendants respond that "[n]o responsive documents are maintained" as opposed to "no documents exist responsive to this request." As noted above, if responsive documents have been lost, discarded, destroyed, or removed from defendants' possession, we are entitled to an explanation.

Thank you for your attention to these matters. We look forward to receiving defendants' supplemental discovery responses by March 23, 2020.

Sincerely,

IdeaLegal

Elizabeth Milesnick, Principal

2240 N. Interstate Ave. Ste. 270    T. 503 902 5760
Portland, Oregon 97227    E. emilesnick@idealegal.com