**IdeaLegal**

August 17, 2020

VIA E-MAIL

Eric Postma
Bittner & Hahs, PC
4949 SW Meadows Road, Suite 260
Lake Oswego, OR 97035
epostma@bittner-hahs.com

    Re:    Conferral re Radagast's Written Discovery Responses

Dear Eric,

We write to respond to your letter of June 23, 2020 regarding Radagast's responses to defendants' interrogatories and requests for production.

We will address your specific concerns but want to begin by addressing the broader context in which the discovery arises. This case is not about "the value of [Radagast] and its intellectual property … at the time of the NDA." It's not an acquisition gone wrong. Defendants never negotiated with Radagast for a sale of any part of the company. No money changed hands or was even discussed for any of Radagast's assets. This case is <u>only</u> about defendants' compliance with Section 5 of the NDA. It is a simple breach of contract case stemming from the allegation that defendants breached their duty to return confidential information to Radagast and certify that they had done so. Complaint at ¶¶ 44-45. The complaint does not even allege that defendants <u>used</u> the confidential information, only that their continued retention of the information <u>risks</u> exposure or use of the confidential information disclosed to defendants, necessitating an injunction.

At most, the value of the confidential information disclosed to defendants may be relevant, but Radagast's limited claim relating to defendants' improper retention of specific documents and other information does <u>not</u> provide defendants license to conduct a full due diligence-style evaluation of Radagast, a company that was <u>already closed</u> at the time the events in the complaint took place. No judge is going to agree that invasive, in-depth financial discovery going back five years is appropriate under these circumstances. Our responses to your individual inquiries are consistent with this view of the case.

<u>Interrogatory Responses</u>

    ) Regarding <u>Interrogatory No. 1</u>, Radagast's interrogatory responses do not refer to a person named Eric Fenstermaker. Also, given your refusal to respond to simple follow-up questions relating to the origin and present location of certain documents in defendants' production, it is somewhat contradictory for you to seek more information about any of the individuals named in response to Interrogatory No. 1. We will tell you more about Erin Fenstermaker when you tell us when and on whose

2240 N. Interstate Ave. Ste. 270    T. 503 902 5760
Portland, Oregon 97227    E. emilesnick@idealegal.com

EXHIBIT I
Page 1 of 7

IdeaLegal

Eric Postma
August 17, 2020
Page 2 of 7

computer documents C&L000530-659 were located, and what has become of those documents since they were produced.

)   Regarding <u>Interrogatory Nos. 3, 6, and 7</u>, Radagast will supplement its interrogatories and document production to provide more information about the reasons for its closure and about the financial considerations involved in that decision.

)   Regarding <u>Interrogatory No. 9</u>, the request does not actually seek the information are you now asking Radagast to provide.  And even if it did, as we have said, Radagast was not at the trade show, nor were any of its representatives.  Radagast does not know who was there, nor their duties, nor their reasons for being there.  There is no call for Radagast to speculate about any of this.

)   Regarding <u>Interrogatory No. 10,</u> we are still in the middle of the discovery process. Radagast has yet even to depose your clients and defendants are refusing to answer—during the written discovery stage—reasonable questions about the circumstances surrounding their continued possession of confidential information. It is plainly premature to require Radagast to commit to the extent of its damages. Radagast will nonetheless supplement its interrogatory response to make clear that, based on what is known at this time, Radagast is plainly entitled to injunctive relief and that defendants' failure to comply with Section 5—despite patient, reasonable informal and formal requests for information—forced Radagast into a lengthy, cumbersome, and expensive process to secure its confidential information under an NDA that provides for prevailing party attorney fees.

)   Regarding <u>Interrogatory No. 15</u>, Radagast will supplement the interrogatory response to refer to all vendors of which Radagast made defendants aware.  Whether defendants currently happen to be using vendors Radagast never mentioned to defendants has nothing to do with this case.

)   Regarding <u>Interrogatory No. 17</u>, Radagast will supplement this interrogatory response and the response to Interrogatory No. 2 to make clear that the most Radagast recalls telling defendants about its "process information" is that making raw cat food is "a lot like making sausage" in that you grind up the meat using a mixer and put it through a 'filling machine' into a container.  Radagast does not recall any more detailed information than that.  While your argument that process information could relate to the reason for the recall—and is thus without value—has appeal at a theoretical level, Radagast will stipulate right now that the "process information" it provided was without value in the first place.  There is certainly no need for Radagast to go through the unduly burdensome process of locating and producing years of correspondence with every state and federal regulatory body in what is—as your clients can attest—an

IdeaLegal

Eric Postma
August 17, 2020
Page 3 of 7

intensely regulated industry.  For the sake of compromise, however, Radagast will further supplement this interrogatory response and its document production to provide information relating to the scope and factual underpinning of the recall that led the company to close.  This is more than sufficient under the circumstances.

- Regarding Interrogatory No. 18, Radagast's process information can only be relevant to the extent it was information disclosed and retained by defendants.  Here too, Radagast will reiterate that the reference to sausage-making was the sum total of the process information it recalls providing, and that this particular information did not have "tremendous"[1] or, indeed, any significant value.

- Regarding Interrogatory No. 19, no HACCP information was provided to defendants under the NDA.  It may very well be that defendants could differentiate their HACCP process from Radagast's, but this would have no bearing on the impact of defendants' violations of Section 5 of the NDA. If you continue to pursue this, please explain why, specifically, you believe this information to be relevant.

- Regarding Interrogatory No. 20, no such information was shared with defendants nor are regulatory communications relevant for the reasons described regarding Interrogatory No. 17.  If you continue to pursue this, please explain why, specifically, you believe this information to be relevant.

- Regarding Interrogatory No. 21, no such information was shared with defendants nor are Radagast's use of animal proteins relevant to the impact of defendants' violations of Section 5 of the NDA.  If you continue to pursue this, please explain why, specifically, you believe this information to be relevant.

Responses to Requests for Production

- Regarding RFP No. 3, we are unsure why you find it implausible that Radagast chose not to blog about defendants' violations of the NDA.  As you know, Radagast is not keen on public disclosure of company matters.  You have communications with Carol Frank. Lanny Viegut, and Kate McCarron.  There are no other responsive documents.

---

[1] As you well know, the phrase "tremendous value" in the complaint refers to the entirety of Radagast's intellectual property, including a considerable amount of information that was never shared with defendants.  The allegation in Paragraph 10 merely provides background relating to Radagast's willingness to discuss a sale of its remaining assets, which is not in dispute here.  It is not a reference relating to Radagast's damages in this case.

2240 N. Interstate Ave. Ste. 270   T. 503 902 5760
Portland, Oregon 97227   E. emilesnick@idealegal.com

EXHIBIT I
Page 3 of 7

IdeaLegal

Eric Postma
August 17, 2020
Page 4 of 7

- Regarding RFP No. 5, thank you for letting us know.  We will proceed accordingly.

- RFP No. 6 asks for evidence that "Rad Cat Raw Diet is confidential intellectual property."  It was not.  It was a cat food sold to the public in stores across the United States.  The RFP is based on a false and nonsensical premise and Radagast will not be required to respond to it.

- Regarding RFP No. 7, the only responsive documents that have been withheld are routine emails between the parties relating to their business relationship prior to October 2018 (i.e., emails with sales representatives regarding the fulfillment of Rad Cat orders, etc.).

- Regarding RFP No. 10, it is not the term "confidential information" in the RFP that makes the request vague, ambiguous, and unintelligible but the notion that the parties were discussing the "potential purchase of … confidential information." They were discussing the purchase of particular Radagast assets, including some hard assets like equipment and inventory, among other things.  The premise of this request is incorrect.  In any case, all documents between Radagast and defendants—relating to any topic—have been produced.

- Regarding RFP No. 15, Radagast continues to disagree that "the value of the company" is relevant to this dispute.  Nonetheless, for the sake of compromise only, and to avoid unnecessary motions practice, Radagast will supplement its document production to provide the company's tax returns for 2017 and 2018.

- Regarding RFP No. 16, given that Radagast has agreed to provide its tax returns as a compromise in order to give defendants a sense of the scale of Radagast's business, there is absolutely no need to engage in the overly burdensome, invasive, and unnecessary process of providing five years of detailed financial information.  A summary of these financial metrics is in the Confidential Information Memorandum that defendants retained and have produced—twice—in this lawsuit.  No more could possibly be needed or would be required by the court.

- Regarding RFP No. 17, see our discussion of Interrogatory No. 17 above.  Radagast will supplement its document production with respect to recall information.

- Regarding RFP No. 18, Radagast will supplement its document production to the extent there are any "documents identifying the equipment list" disclosed to defendants.

2240 N. Interstate Ave. Ste. 270   T. 503 902 5760
Portland, Oregon 97227   E. emilesnick@idealegal.com

EXHIBIT I
Page 4 of 7

**IdeaLegal**

Eric Postma
August 17, 2020
Page 5 of 7

- Regarding RFP No. 19, as you know, the discussions between the parties never got to the point of a monetary offer relating to the equipment and this case is not about Radagast's sale or failure to sell any equipment.  The value of the equipment itself—how much it costs—really has nothing to do with this case.  At most, I suppose we can debate the value of the idea of using certain equipment, if indeed defendants got the idea from Radagast and then put it into practice (which has not been alleged).  But the value of the equipment itself is wholly irrelevant.  And in any case, Radagast sold the equipment as part of an asset liquidation, so the prices would have little to do with the fair market value of the items, even if that were relevant.

- Regarding RFP No. 20, as noted above, Radagast will supplement its interrogatory responses to provide a list of vendors disclosed to defendants.

- Regarding RFP No. 21, the labeling Radagast produced absolutely did include an ingredient list and it is the same labeling that was provided to the regulatory agencies.  This is ample information for your purposes.  In any case, the idea that "comparing the [Rad Cat] products with the [Lotus products] could and would absolve them of any alleged breach of the NDA" is nonsense.  This is not a trade secret misappropriation case.  Defendants have not been accused of stealing (or even having access to) Radagast's formulas.  They are liable for breaching the NDA if they failed to comply with Section 5 by retaining confidential information and declining to follow the procedures outlined in that paragraph.  Whether the Lotus raw cat food looks, tastes, is produced, sold, or sourced differently from Rad Cat Raw Diet is not in the least relevant to defendants' liability for breach of Section 5 of the NDA.  There is simply no way a judge would give defendants access to Radagast's most confidential information—which was never even alleged to have been shared with defendants—based on this rationale.

- Regarding RFP No. 23, as noted above, compliance issues have no bearing on the question of or impact of defendants' violations of Section 5 of the NDA.  As Radagast has agreed to clarify, it does not claim that the process-related information shared with defendants has value, let alone "tremendous value."  We also fail to follow the logic of the argument that "the reasoning behind variations between the Plaintiff's product, and that which was eventually produced by Lotus" makes regulatory correspondence relevant to defendants' breach of Section 5 of the NDA.  Please explain this further if you plan to pursue it in a motion to compel.

- Regarding RFP No. 24, at the risk of sounding repetitive, there is no relevance to information relating to "the nutritional value" of Radagast's products or to "understanding the differences in formulas" between our clients' products.

2240 N. Interstate Ave. Ste. 270    T. 503 902 5760
Portland, Oregon 97227              E. emilesnick@idealegal.com

EXHIBIT I
Page 5 of 7

IdeaLegal

Eric Postma
August 17, 2020
Page 6 of 7

    <u>Defendants are not accused of copying any aspect of Radagast's formula</u>.  Please see our discussion of RFP No. 21.

- Regarding <u>RFP No. 25</u>, please see our discussion of Interrogatory No. 18.

- Regarding <u>RFP No. 26</u>, please see our discussion of Interrogatory No. 19.

- Regarding <u>RFP No. 27</u>, please see our discussion of Interrogatory No. 20.  Again, "the value of the company and its alleged intellectual property" is not at issue in this case.  No one was buying or failing to buy "the company."  Radagast was closed at the time of the events in the complaint.  And much of Radagast's intellectual property—including the items that would make a comparison of the products relevant—was never provided to defendants.

- Regarding <u>RFP No. 28</u>, please see our discussion of Interrogatory No. 21 and RFP No. 27.

- Regarding <u>RFP No. 29</u>, stating that sanitation schedules "relate to the value of the company and its alleged intellectual property, the damages that may be claimed, a comparison of the products of the parties, and our ability to provide a defense by comparing the products" does not make it so.  We fail to understand how sanitation schedules and programs relate to any of these topics, which are also insufficient to justify discovery on such a seemingly random issue.

To summarize, we have tried our best to compromise on certain points, even on some we continue to view as irrelevant and unnecessary.  But there is simply no call for defendants to review every scrap of regulatory correspondence, every financial report for the last five years, detailed product analysis and formula information, and even the sanitation schedules of a company that ceased to exist before the NDA was signed.  This is way over the top, as the judge will surely recognize, and goes well beyond what could possibly be required to defend your clients from the accusation that they failed to properly return documents under a nondisclosure agreement.

I have said that <u>defendants</u> should err on the side of disclosure because they are the ones accused of (and, in fact,) holding on to confidential information after claiming to have returned it and who have ignored request after request to provide more information and comply with the letter of Paragraph 5 of the NDA.  Radagast is not in the same boat here.  Radagast holds no confidential information of Centinela or Lotus.  Your clients are just seeking more—previously undisclosed—confidential information <u>of Radagast</u>.  There is simply no justification for the extent of your clients' demands.

# IdeaLegal

Eric Postma
August 17, 2020
Page 7 of 7

We look forward to hearing from you soon.

                                                                             Sincerely,

                                                                             IdeaLegal

                                                                             Elizabeth Milesnick, Principal

2240 N. Interstate Ave. Ste. 270    T. 503 902 5760
Portland, Oregon 97227    E. emilesnick@idealegal.com

EXHIBIT I
Page 7 of 7