**Laura R. Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**Adam M. Starr, OSB #125393**
AdamStarr@MarkowitzHerbold.com
**Molly K. Honoré, OSB #125250**
MollyHonore@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Tele:  (503) 295-3085
Fax:  (503) 323-9105

  Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **RADAGAST PET FOOD, INC.**, an Oregon corporation,<br><br>  Plaintiff,<br><br>v.<br><br>**CENTINELA FEED, INC.**, a California corporation; **THE LOTUS PET FOOD, INC.**, a California corporation,<br><br>  Defendants. | Case No. 3:19-cv-01467-JR<br><br>**PLAINTIFF RADAGAST PET FOOD, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Pursuant to Fed. R. Civ. P. 56 |

### LR 7-1 CERTIFICATION

Counsel for Radagast Pet Food, Inc. ("Radagast") has made a good faith effort through personal or telephone conferences to resolve this dispute and has been unable to do so.

### INTRODUCTION

This case is about defendants' breach of a nondisclosure agreement.  Radagast is a Portland-based industry leader in premium raw cat food that had to close its doors in October 2018 due to economic concerns.  In October 2018, defendants—a California-based retail pet

**Page 1 -   PLAINTIFF RADAGAST PET FOOD, INC.'S MOTION FOR PARTIAL
            SUMMARY JUDGMENT**

store chain and a manufacturer of dry and canned pet food—approached Radagast about a potential investment or partnership to keep the product on the market.  After entering into Radagast's Nondisclosure Agreement (the "NDA"), Radagast provided defendants with a confidential list of its production equipment, raw materials in inventory, growth plans and projections, financials, and many other trade secrets.

Shortly after, defendants—which admitted they had no prior knowledge of how to make raw cat food—said they would "pass" on moving forward with further discussions regarding partnering or purchasing any Radagast assets.  But just five months later, one of the defendants announced the launch of its own raw cat food line with the same protein varieties, language identical to Rad Cat® Raw Diet on their packaging, and the same packaging in tubs as Radagast's.  And it promoted the product at a trade show as "exactly the same" as Radagast's.

Radagast promptly sought the return of its confidential information from defendants and requested they state under oath that all confidential material was returned—as expressly required by the terms of the NDA.  Defendants responded by ignoring Radagast and eventually providing a deficient and misleading response.  This lawsuit followed.

Now, nearly two years after defendants first approached Radagast, they admit that they retained Radagast's confidential information—thereby breaching the NDA.  Accordingly, and pursuant to FRCP 56(a), Radagast moves for partial summary judgment in its favor on the "liability" part of its breach of contract claim, leaving the amount of Radagast's damages to be determined by the jury.

## STATEMENT OF UNDISPUTED FACTS

**I.     The parties enter into the NDA.**

Radagast was co-founded in Portland, Oregon by Tracey and Janice Hatch-Rizzi, a married couple who discovered the benefits of a raw cat food diet after they developed a raw

food diet for their kitten, Juno.  (Declaration of Janice Hatch-Rizzi in Supp. of Pl.'s Mot. for Partial Summ. J. ("Hatch-Rizzi Decl."), ¶ 2.)  This local woman-owned company had an extremely loyal following, and soon became an industry leader in premium raw cat food—selling lamb, chicken, turkey, venison, beef, and pork varieties (all single protein recipes in tubs) of its Rad Cat® Raw Diet.  (*Id*.)  But due to an unfortunate and unexpected convergence of events, Radagast decided to close its business and announced that decision on its website on October 15, 2018.  (*Id*. at ¶ 3.)

After Radagast announced it was winding up its raw cat food business, defendant Centinela Feed, Inc. ("Centinela"), a retail seller of pet food and pet supplies, set up a telephone call regarding a potential investment in Radagast.  (Hatch-Rizzi Decl., ¶¶ 4-5.)  Chris Nakagawa—an officer at Centinela and defendant The Lotus Pet Food, Inc. ("Lotus"), a manufacturer of dry and canned food for dogs and cats—participated in the call and told Radagast that he wanted to explore a deal.  (*Id*. at ¶ 6.)  Radagast explained that investment was no longer an option, only the sale of remaining company assets, and a nondisclosure agreement was needed before moving forward.  After the call, Mr. Nakagawa followed up with an email with the subject "NDA" and both the Centinela and Lotus names and logos in the signature block.  (*Id*. at ¶¶ 6-7.)  He wrote: "[H]ope we can do something together."  (*Id*. at ¶ 7.)  Radagast then sent Mr. Nakagawa its NDA, which he signed the same day.  (*Id*.)

After the NDA was executed, Radagast provided its confidential information to Mr. Nakagawa and Lotus's Daron Matsuura, including information about equipment and procedures needed to manufacture Rad Cat® Raw Diet products and its marketing plans.  (Hatch-Rizzi Decl., ¶ 9.)  After six days of discussion, Centinela and Lotus went radio silent.

Page 3 -   PLAINTIFF RADAGAST PET FOOD, INC.'S MOTION FOR PARTIAL
            SUMMARY JUDGMENT

When Radagast's broker followed up, Mr. Matsuura let her know they had "decided to pass." (*Id*. at ¶ 12.)

## II.     The information provided by Radagast was confidential.

The NDA defines "Confidential Information" as "any nonpublic information received from Radagast[.]"  It may be "written, oral, in any tangible form or electronic, embodied in or derived from product samples, or in other forms" and "[a]ny Radagast information provided to Recipient is presumed to be Confidential Information unless otherwise stated by Radagast or this agreement."  (Declaration of Adam Starr in Supp. of Pl.'s Mot. for Partial Summ. J. ("Starr Decl."), Ex. 1.)  The information that Radagast provided defendants was nonpublic information, and Radagast took many steps to protect it—including requiring employees to sign confidentiality agreements and requiring visitors to the Radagast facility to sign a log and to sign NDAs if they were to encounter anything confidential.  (Hatch-Rizzi Decl., ¶ 10.)  Radagast's information was therefore "confidential."

## III.    Revelations at the Global Pet Expo.

Five months later, on March 20, 2019, during the Global Pet Expo annual industry trade show in Florida, Radagast received an email from a representative of a company with whom Radagast was in the final stages of negotiating an asset purchase.  The email stated, "I just finished up a meeting with a distributor, who shared the news that Lotus has purchased your formula.  Lotus has apparently been sharing this with certain people in the industry. . . .  Now I'm confused.  I'd appreciate if you could share where things stand."  (Hatch-Rizzi Decl., ¶ 13.)

## IV.    Radagast seeks compliance with Section 5 of the NDA.

Upon learning that Lotus was erroneously telling the industry that it had bought the Rad Cat® Raw Diet formula, Radagast contacted defendants, demanding that they comply with

Page 4 -   PLAINTIFF RADAGAST PET FOOD, INC.'S MOTION FOR PARTIAL
                    SUMMARY JUDGMENT

Section 5 of the NDA. Section 5 of the NDA requires, on demand, that defendants: (1) cease use of all Confidential Information; (2) return all materials containing Confidential Information; and (3) state under oath that they have complied with the demand:

> At Radagast's request, Recipient will (i) cease all use of Confidential Information; (ii) return all materials furnished by Radagast that contain Confidential Information; and (iii) destroy or deliver to Radagast (as instructed by Radagast) any electronic records or other materials containing Confidential Information, including materials prepared by Recipient. Upon request, Recipient will state in writing under oath whether it has complied with this section.

Radagast's letter contained a formal demand that defendants return all Confidential Information and "state in writing under oath" that "any electronic records or other materials containing Confidential Information" have been destroyed. (Starr Decl., Ex. 2.)

Defendants ignored the letter. Radagast was forced to follow up on May 23, 2019, highlighting that defendants' "failure to return all confidential information and provide such written, sworn confirmation is a material breach of the NDA, and deepens Radagast's concerns about your possible retention and use of the company's trade secrets." (Starr Decl., Ex. 3.)

Another three weeks went by before an attorney named Michael Bales sent a letter to Radagast stating that he had "advised" Centinela to delete all electronic copies of certain Confidential Information provided by Radagast pursuant to the NDA. But he failed to mention other categories of Confidential Information provided by Radagast. (Starr Decl., Ex. 4.)

Mr. Bales' letter enclosed an affidavit signed only by Mr. Nakagawa and citing the same incomplete list of Confidential Information. Mr. Nakagawa's declaration states, "The RadCat Documents have been deleted from our computer system and no electronic records have been retained by us and no physical copies of the RadCat Documents were ever created." It further states, "***We have delivered electronic copies of the RadCat Documents to our counsel***, Michael

Page 5 -   PLAINTIFF RADAGAST PET FOOD, INC.'S MOTION FOR PARTIAL
           SUMMARY JUDGMENT

V. Bales, *to be retained by him and to be disclosed or used only if Radagast institutes legal action against Centinela Feed*." (Starr Decl., Ex. 5) (emphasis added).

Mr. Bales' letter invited Radagast to contact him if the letter did not allay the company's concerns. It did not. On June 25, 2019, Radagast sent a detailed letter describing the factual inconsistencies in the letter and, pointing out, as to compliance with Section 5 of the NDA, that:

- The affidavit enumerates only some of the documents provided by Radagast, and fails to address other Confidential Information received by defendants;

- Radagast is entitled to any "materials prepared by" defendants based on this Confidential Information, including notes of telephone calls and emails forwarding or discussing the Confidential Information;

- The Nakagawa affidavit is from Mr. Nakagawa alone, who represents both defendants, with nothing from Matsuura or anyone else at Lotus who also received Radagast Confidential Information; and

- The Nakagawa affidavit does not state under oath that defendants will cease use of all Confidential Information, regardless of the extent to which the companies continue to possess physical or electronic copies of the information.

(Starr Decl., Ex. 6.) There was no response—ever. Radagast therefore had no choice but to file this lawsuit to secure its Confidential Information.

**V.    Defendants' discovery responses confirm their breach of Section 5.**

Defendants' discovery responses confirmed multiple breaches of Section 5 of the NDA. First, they admit that rather than returning the Confidential Information, they sent it to a third party (Mr. Bales). (Starr Decl., Ex. 5.)

Second, they concede that they continued to hold Confidential Information, in addition to the Confidential Information they sent Mr. Bales. Radagast served requests for production on defendants, including a request to produce "All Radagast Confidential Information." In response, they stated that "no responsive documents are maintained." (Starr Decl., Ex. 7 (Defs.' Resp. to Pl.'s First Set of Reqs. for Produc., 1/28/20, at 2).) Their document production, however, included some of the Confidential Information that Radagast had previously provided to defendants pursuant to the NDA (C&L0000030-78 and C&L000089-172). (Hatch-Rizzi Decl., ¶ 14.) Defendants conceded that some of the Confidential Information produced came not from Mr. Bales' files, but directly from defendants. (Starr Decl., Ex. 8 at 4 ("Daron Matsuura and Chris Nakagawa exchanged limited emails with Carol Frank [Radagast's broker] about purchasing certain assets, which can be more specifically reviewed and analyzed in the additional documents produced, Bates labeled C&L000518 to C&L000700.").)

Defendants' supplemental production included more Confidential Information that Radagast provided them (C&L000530-659). (Hatch-Rizzi Decl., ¶ 14.) During a conferral call, defendants' attorney acknowledged that these came directly from Centinela/Lotus and were not among the documents Mr. Bales had kept. (Starr Decl., Ex. 9.)

Then, on September 21, 2020, defendants answered this interrogatory, "Please state the circumstances surrounding your production of documents Bates labeled C&L000530-659," by admitting they still possessed Confidential Information as of the date of the production:

> At or around the time of Defendants' original production in January 2020, Daron Matsuura discovered the aforementioned documents attached to an October 31, 2018 email (C&L000528-529), and deleted the same based on prior demands. These documents were on a company computer used exclusively by Daron Matsuura[.] . . . On or about September 2020, Daron Matsuura, with the assistance of a company IT manager, Justin Lim, discovered a duplicate copy of the same email (C&L000528-529) under a recovery folder stored on Defendants' cloud server which is serviced by Microsoft. Based on prior demands to delete or

>remove documents from Defendants' devices, this document was removed by Daron Matsuura upon discovery in the recovery folder by simply selecting a delete option.  The aforementioned documents were never in the possession or control of attorney Michael Bales.

(Starr Decl., Ex. 10 (Defs.' Answer to Pl.'s Second Set of Interrogs., 9/21/20, at 3-4).)

It is therefore undisputed that Daron Matsuura—and defendants—kept Radagast's Confidential Information in violation of the NDA and despite Mr. Nakagawa's sworn statement that all Confidential Information had "been deleted from our computer system and no electronic records have been retained by us[.]"

## LEGAL ANALYSIS

**I.   A party may move for partial summary judgment on liability only.**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  FRCP 56(a).  Here, Radagast seeks summary judgment in its favor on the "liability" part of its breach of contract claim; specifically, a ruling that Centinela/Lotus breached Section 5 of the NDA, which states:

>At Radagast's request, Recipient will (i) cease all use of Confidential Information; (ii) return all materials furnished by Radagast that contain Confidential Information; and (iii) destroy or deliver to Radagast (as instructed by Radagast) any electronic records or other materials containing Confidential Information, including materials prepared by Recipient.  Upon request, Recipient will state in writing under oath whether it has complied with this section.

Radagast does not seek summary judgment on the "damages" part of its breach of contract claim.  The amount of Radagast's damages is best determined by the jury after a forensic examination and trial.  *See Tri-County Metro. v. Time Warner Telecom of Or.*, LLC, No. CV 07-691 PK, 2008 WL 4572519, at *6 (D. Or. Oct. 14, 2008) (summary judgment on liability for breach of contract can leave the question as to the amount of damages to the jury).

Page 8 -   PLAINTIFF RADAGAST PET FOOD, INC.'S MOTION FOR PARTIAL
                SUMMARY JUDGMENT

**II.   Defendants breached Section 5 of the NDA as a matter of law.**

To prevail on its breach of contract claim, Radagast must prove "the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff." *Slover v. Ore. State Bd. of Clinical Social Workers*, 144 Or. App. 565, 570 (1996) (internal quotation marks and citations omitted). Radagast seeks summary judgment on all elements except damages.

As explained above, Radagast demanded that defendants return all Confidential Information and "state in writing under oath" that "any electronic records or other materials containing Confidential Information" have been destroyed. Although Mr. Nakagawa swore "under penalty of perjury" that he destroyed Radagast's Confidential Information, it is undisputed that defendants did not even claim to have destroyed other copies of electronic records containing Radagast's Confidential Information until *September 2020*—and even then, they failed to state under oath that they destroyed all copies of Radagast's Confidential Information. (*See* Starr Decl., Ex. 10 (Defs.' Answer to Pl.'s Second Set of Interrogs., 9/21/20, at 3-4).) That, in itself, is a breach of Section 5.[1]

Defendants also breached the NDA by failing to state in writing under oath that they would cease all use of Radagast's Confidential Information, by failing to provide an affidavit from Mr. Matsuura or Mr. Nakagawa on behalf of Lotus, and by providing Radagast's Confidential Information to their attorneys. In this circuit, "[c]ontrol [over documents] is defined as the legal right to obtain documents upon demand." *Int'l Longshore and Warehouse Union v. ICTSI Ore., Inc.*, No. 3:12-cv-1058-SI, 2018 WL 6305665, at *3 (D. Or. Dec. 3, 2018)

---

[1] Defendants do not claim that Radagast failed to perform its duties under the NDA, so that element of the breach of contract claim is undisputed as well. (*See* Dkt. 4, 9/18/19.)

**Page 9 -   PLAINTIFF RADAGAST PET FOOD, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

(quoting *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999); *see also Clark v. Vega Wholesale, Inc.*, 181 F.R.D. 470, 472 (D. Nev. 1998) ("A party that has a legal right to obtain certain documents is deemed to have control of the documents.").  Therefore, the fact that defendants turned Radagast's Confidential Information over to their attorneys means that they still retain control over that Confidential Information—which they could recover upon demand.

Finally, although defendants may argue that they somehow had a right to provide documents to their attorneys—even though they had no right under the NDA to do so—because of the potential for later litigation, courts do not allow vigilante tactics in the discovery process. *See O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 762-64 (9th Cir. 1996) (rejecting claim that a party was justified in stealing confidential information because his purpose was to preserve evidence for his future lawsuit); *Herrera v. Clipper Group, L.P.*, 97-CIV-560 (SAS), 1998 WL 229499, at *2 (S.D.N.Y. May 6, 1998) ("The discovery process is not meant to be supplemented by the unlawful conversion of an adversary's propriety information.").  Indeed, to the extent defendants' attorneys have relied on Radagast's stolen Confidential Information in this litigation, they acted improperly.  *See Furnish v. Merlo*, No. 93-1052-AS, 1994 WL 574137, at *9-10 (D. Or. Aug. 29, 1994) (holding that attorneys who received and relied on the opposing party's confidential information, which was stolen by their client, acted improperly; the attorneys "should have returned the [confidential information], requested production and an order to compel to challenge the assertion of privilege."); *In re Shell Oil Refinery*, 143 F.R.D. 105, 108 (E.D. La. 1992) (attorneys' receipt of "surreptitiously obtained . . . propriety documents belonging to [opposing party] . . . was inappropriate and contrary to fair play").  And by stealing Radagast's Confidential Information and giving it to their attorneys, defendants also denied Radagast the opportunity to seek a protective order pursuant to the rules of civil procedure.

## CONCLUSION

The Court should grant summary judgment in Radagast's favor on the "liability" part of its breach of contract claim; specifically, the Court should find that defendants breached Section 5 of the NDA. Damages will be proven at trial.

DATED this 9th day of October, 2020.

MARKOWITZ HERBOLD PC

By: *s/ Laura R. Salerno Owens*

Laura R. Salerno Owens, OSB #076230
Adam M. Starr, OSB #125393
Molly K. Honoré, OSB #125250
(503) 295-3085
Of Attorneys for Plaintiff

1049913