**Laura R. Salerno Owens, OSB #076230**
LauraSalerno@MarkowitzHerbold.com
**Adam M. Starr, OSB #125393**
AdamStarr@MarkowitzHerbold.com
**Molly K. Honoré, OSB #125250**
MollyHonore@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Tele:  (503) 295-3085
Fax:  (503) 323-9105

      Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **RADAGAST PET FOOD, INC.**, an Oregon corporation, | Case No. 3:19-cv-01467-JR |
| Plaintiff, | **PLAINTIFF RADAGAST PET FOOD, INC.'S OBJECTION TO MAGISTRATE JUDGE RUSSO'S ORDER RE DEFENDANTS' MOTION TO COMPEL** |
| v. | |
| **CENTINELA FEED, INC.**, a California corporation; **THE LOTUS PET FOOD, INC.**, a California corporation, | |
| Defendants. | |

## OBJECTION

Pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A), plaintiff Radagast Pet Food, Inc. ("Radagast") objects to Magistrate Judge Jolie A. Russo's November 2, 2020 Order (Dkt. 42) granting defendants Centinela Feed, Inc. and Lotus Pet Food, Inc.'s motion to compel (Dkt. 18), in part, as follows:  "Plaintiff shall produce documents related to the manufacturing techniques, recipes/ingredients used, equipment lists, vendors, standard operating

procedures, and sourcing information of its Rad Cat product line[.]"  Radagast's objection is supported by the following memorandum.

## INTRODUCTION

This case concerns defendants' breach of a nondisclosure agreement.  Plaintiff Radagast is a local manufacturer of a raw cat food product.  Defendant Centinela is a retail supplier of pet food, and defendant Lotus is a manufacturer of dry and canned pet foods.  In October 2018, the parties discussed a potential sale of some of Radagast's assets to defendants.  Radagast required, as a condition of discussion, that defendants sign a nondisclosure agreement ("NDA"), which they did.  Radagast then provided defendants with confidential information about their business, including marketing, growth strategy, financial, and inventory documents.  Importantly, Radagast never disclosed its proprietary cat food formula, manufacturing processes, ingredient sourcing and vendors, or standard operating procedures.  Shortly after that, defendants informed Radagast that they were passing on moving forward with discussing the purchase of any assets.

Roughly six months later, Radagast requested that defendants comply with the NDA they had signed, and destroy its confidential information and sign affidavits stating that they had done so.  These are express requirements of the NDA.  Defendants, however, failed to comply. Radagast then commenced this lawsuit.

The only relief Radagast is seeking is compliance with the NDA – e.g., confirmation that its confidential information has been destroyed.  Radagast does not contend that defendants have used their confidential information, stolen their intellectual property, or that defendants' new line of raw cat food is the same as Radagast's cat food (or somehow derived from Radagast's confidential information).  Accordingly, Radagast will not proffer evidence of any of this at trial. Nor does Radagast even seek monetary damages.  The sole issue in the case is whether

defendants breached the NDA by failing to destroy Radagast's confidential information and provide the required declarations.

Despite this, the Court ordered Radagast to produce, among other things, "documents related to the manufacturing techniques, recipes/ingredients used, equipment lists, vendors, standard operating procedures, and sourcing information of its Rad Cat product line" (collectively, "Manufacturing Process Documents"). The Court's order was based on its erroneous belief that Radagast seeks to prove – or might offer evidence at trial – that Radagast's proprietary cat food formula is the same as a new raw cat food formula that defendants developed. Radagast does not so contend, nor will it proffer such evidence. Indeed, Radagast has even offered to stipulate that the formulas are not the same.

These manufacturing records are not relevant to the claims or defenses or proportional to the needs of the case. And furthermore, requiring disclosure of these documents – particularly Radagast's highly proprietary raw cat food formula and manufacturing techniques, its most closely held trade secrets – puts Radagast's most sensitive information and intellectual property in the hands of defendants. This is particularly concerning given that the sole purpose of this lawsuit is to require defendants to comply with an NDA. Under these circumstances, it is fundamentally unfair to require Radagast to disclose even more confidential information than was ever disclosed in the first place. Accordingly, Radagast respectfully requests that the Court modify the discovery order by denying defendants' request that Radagast produce the Manufacturing Process Documents.

## RELEVANT FACTS

### I.    Background

In October 2018, the parties discussed a sale of some of Radagast's assets to defendants. (Starr Decl. Ex. 4, Dkt. 23, FAC ¶ 15.)  Radagast is an industry leader in premium raw cat food. (*Id.* ¶ 9.)  Defendants are a retail pet store chain and a manufacturer of dry and canned pet food. (*Id.* ¶¶ 10-11.)  Prior to proceeding, however, Radagast required defendants to sign an NDA, which they did.  (*Id.* ¶¶ 15-17.)  Section 5 of the NDA requires, on demand, that defendants:  (1) cease use of all confidential information; (2) return all materials containing confidential information; and (3) state under oath that they have complied with the demand.  (*Id.* at Ex 1.) After the NDA was signed, Radagast sent confidential information to defendants, including market and financial information.  (*Id.* ¶ 21.)  Shortly after that, defendants decided to pass on moving forward with further discussions regarding purchasing any remaining assets.  (*Id.* ¶ 24.)

Five months later, Radagast learned that defendants entered the raw pet food market.  (*Id.* ¶¶ 25-26.)  Radagast demanded that defendants comply with the NDA by returning its confidential information and stating under oath that it had done so.  (*Id.* ¶¶ 28-29.)  Defendants eventually responded with a deficient affidavit, misidentified Radagast's confidential information, and told Radagast it was providing the confidential information to a third party (an attorney) for safekeeping.  (*Id.* ¶¶ 30-31.)  Radagast responded by filing this lawsuit – seeking to obtain defendants' compliance with the NDA – e.g., deletion of its confidential information and saying under oath that they had done so.

### II.    Defendants' motion to compel.

Defendants filed a motion to compel on September 21, 2020 (Dkt. 18).  They sought numerous categories of documents, including Manufacturing Process Documents.  (Dkt. 18 at 4-

5.)  These include, among other things, "manufacturing techniques, recipes/ingredients used, equipment lists, vendors, standard operating procedures ("SOPs"), and sourcing information." (Dkt. 18 at 4.)  Defendants contended (erroneously) that Radagast alleges that defendants used Radagast's confidential information in developing their raw cat food line, and that production of these documents are therefore necessary "to show that Defendants did not use the confidential information during the development of their own product."  (*Id.* at 4-5.)

**III.    Radagast's opposition and First Amended Complaint.**

Radagast filed an opposition to the motion to compel (Dkt. 21) and also amended its complaint to further clarify that it does not contend or allege that defendants used or misused its confidential information, that their new raw cat food product was somehow developed using Radagast's confidential information, nor seek damages for the same.  (Starr Decl. Ex. 4.)  The First Amended Complaint was meant to clarify that the sole issue in the case is obtaining defendants' compliance with the NDA, e.g., ordering defendants to destroy or return any confidential information still in its possession and stating under oath that they have done so. (*Id.*)

The First Amended Complaint does explain, as background information, that Radagast learned – prior to seeking compliance with the NDA – that defendants' representatives had told others that their new product was the same as Radagast's products.  (*Id.* ¶ 26.)  However, Radagast does not contend they are the same, nor will it offer any evidence of the products' similarities or differences at trial.  Indeed, Radagast has even offered to stipulate that the products are not the same, is willing to strike this allegation as part of the granting of this Objection (Starr Decl. Ex. 3), and has withdrawn its Motion for Partial Summary Judgment since it referenced this background allegation.

IV.    **The hearing on the motion.**

During the November 2, 2020 hearing on the motion to compel, the Court granted defendants' motion to compel the Manufacturing Process Documents. Its written order provides in part: "Plaintiff shall produce documents related to the manufacturing techniques, recipes/ingredients used, equipment lists, vendors, standard operating procedures, and sourcing information of its Rad Cat product line[.]" (Dkt. 42.)

The Court explained during the hearing these records are discoverable "based on plaintiff's allegation in its amended complaint that defendants' product is quote, exactly the same, end quote, as plaintiff's product, with the addition of [thiamine]." (Starr Decl. Ex. 1, Tr. at 4:20-24.) The Court had apparently misconstrued the background allegation, which in actuality was that *defendants said their product was the same as Radagast*. (Starr Decl. Ex. 4 at ¶ 26.) Again, Radagast does not contend or allege they are the same; it does not contend defendants used Radagast's confidential information to develop their products; it has offered to stipulate that the products are different; is willing to strike this allegation from the First Amended Complaint to the extent it is the basis for requiring the Manufacturing Documents be produced; and has withdrawn its Motion for Partial Summary Judgment since it referenced this background allegation.

ARGUMENT

I.    **Legal standard.**

This Court conducts a "clearly erroneous or contrary to law" review of a non-dispositive Magistrate order when a timely objection is filed. 28 U.S.C. § 636(b)(1)(A). There is clear error when the court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001). A decision is contrary to law if "the magistrate

fail[ed] to apply or misapplie[d] relevant statutes, case law or rules of procedure." *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) (citation omitted).

**II.    The Magistrate's order is clearly erroneous or contrary to law to the extent it requires Radagast to produce Manufacturing Process Documents, including its proprietary formula.**

This Court should set aside Magistrate Russo's order to the extent it requires Radagast to produce Manufacturing Process Documents because that decision was clearly erroneous or contrary to law.  (Dkt. 42.)  As noted, Radagast <u>only</u> seeks to require defendants to comply with their obligations under the NDA – e.g., confirm that they have deleted or returned Radagast's confidential information, and say so under oath.  (*See, e.g.,* Starr Decl. Ex. 4 at Prayer.) Radagast does not allege that defendants used their confidential information to develop a competing line of cat food (or for any purpose), and it will not proffer any such evidence at trial. In fact, it has offered to stipulate that the products are different. (Starr Decl. Ex. 3.)  Nor does it even seek monetary damages for breach of the NDA, beyond nominal damages or limited damages for the time Radagast spent attempting (in vain) to get defendants to comply with the NDA.  (Starr Decl. Ex. 4 at ¶ 45.)

Nevertheless, Magistrate Russo ordered Radagast to produce Manufacturing Process Documents, finding that those documents are relevant to the allegation that defendants developed a raw cat food product that was "exactly the same" as Radagast's product:

> I find that that information is—the information related to plaintiff's manufacturing process is discoverable based on plaintiff's allegation in its amended complaint that defendants' product is, quote, exactly the same, end quote, as plaintiff's product, with the addition of [thiamine].

(Ex. 1, 11/2/20 Tr., at 19-24.)  Magistrate Russo's statement refers to paragraph 26, which alleges that *defendants' representatives said* the cat food product was "exactly the same" as Radagast's product except for the addition of thiamine.  (Starr Decl. Ex. 4 at ¶ 26.)

But, again, Radagast does not contend that they are the same, will not offer evidence at trial that they are the same, has offered to stipulate that they are different, proposes that this allegation be stricken from the First Amended Complaint as part of the Court's granting of this Objection, and has withdrawn its Motion for Partial Summary Judgment since it referenced this background allegation.  This allegation was meant as mere background.  It was something heard by Radagast just prior to requesting defendants comply with their NDA allegations.

Whether defendants' representatives' statement (*i.e.*, that the products were exactly the same) is true or not is irrelevant for a number of reasons:  Radagast doesn't seek damages for the potential theft of its confidential information, does not contend that the products are the same, and does not contend that defendants used Radagast's confidential information.  Its relevance, if anything, is effect on the listener – e.g., whether, if true or not, it may have played a part in prompting Radagast to request defendants comply with the NDA – e.g., destroy its confidential information and say under oath that they had done so.

Discovery is limited to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  Evidence is only relevant if (1) "it has any tendency to make a fact more or less probable than it would be without the evidence" and (2) "the fact is of consequence in determining the action."  *Barranco v. 3D Systems Corp.*, 952 F.3d 1122, 1127 (9th Cir. 2020) (quoting Fed. R. Evid. 401).  Although this sets a "low threshold for relevance," *Tennard v. Dretke*, 542 U.S. 274, 285 (2004), evidence is still only relevant if it tends to prove a fact at issue.  Fed. R. Evid. 401; *see also* Fed. R. Evid. 401 (Adv. Comm. Notes) ("Relevancy is . . . a relation between an item of evidence and a matter properly provable in the case.").

Here, none of the Manufacturing Process Documents are relevant to the core issue in this case:  whether defendants breached the NDA by retaining confidential information covered by the NDA.  Nor are the requests relevant to proving or disproving Radagast's damages:  Radagast only seeks damages for the time spent seeking to enforce the NDA.  There is, therefore, no relation between the Manufacturing Process Documents and any matter properly provable in the case.  Those documents are therefore not relevant and not discoverable.

Furthermore, requiring production of Manufacturing Process Documents is not proportional to the needs of this case.  The scope of the requested records is broad and captures some of Radagast's most sensitive intellectual property:  documents related to the manufacturing techniques, recipes/ingredients used, equipment lists, vendors, standard operating procedures, and sourcing information of Radagast's Rad Cat product line.  Courts must limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-CV-00580-AC, 2019 WL 1442223, at *2 (D. Or. Jan. 24, 2019) (citing Fed. R. Civ. P. 26(b)(2)(C)(iii)).  Here, given the fact that the Manufacturing Process Documents have no bearing on any matter properly provable in the case, requiring Radagast to expose even more sensitive information and intellectual property to potential theft and misuse simply to recover the confidential information that defendants failed to return is not proportionate.  Indeed, Radagast's proprietary formula is amongst its most closely held secrets, and it would be fundamentally unfair to require its production as part of this litigation.

The Magistrate therefore erred in compelling Radagast to produce Manufacturing

Process Documents.

## CONCLUSION

For the foregoing reasons, Radagast respectfully requests that the Magistrate's order

(Dkt. 42) be set aside to the extent it requires Radagast to produce Manufacturing Process

Documents, and the Court can also strike paragraph 26 from the First Amended Complaint.

DATED this 17th day of November, 2020.

MARKOWITZ HERBOLD PC

By:    *s/ Adam M. Starr*
Laura R. Salerno Owens, OSB #076230
Adam M. Starr, OSB #125393
Molly K. Honoré, OSB #125250
(503) 295-3085
Of Attorneys for Plaintiff

1070647